COMMONWEALTH of Pennsylvania,
Appellee

v.

John KELLY, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Chris Ernest, Appellant.

Commonwealth of Pennsylvania,
Appellee

v.

Tammy Hile, Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 24, 2001.
Filed March 13, 2002.

Ann C. Shapiro, Lewisburg, for Kelly, appellant at 142.

Hugh A. Benson, Selinsgrove, for Ernest, appellant at 143.

David D. Noon, Sunbury, for Hile, appellant at 144.

Robert Campolongo, Office of Atty. Gen., Harrisburg, for the Com., appellee.

Before: DEL SOLE, P.J., JOHNSON, J. and CERCONE, P.J.E.

DEL SOLE, P.J.

¶ 1 Before us today is a consolidated appeal from the order issued by the Court of Common Pleas of Snyder County, which denied Appellants' motions to bar retrial on the grounds that a new trial would violate the double jeopardy prohibitions of the United States and Pennsylvania Constitutions. This appeal stems from a most unusual, if not unique, factual and procedural history during which the trial judge, concerned that he could not preside fairly over the jury trial because of his frustration with the prosecutor's "bombastic" conduct and that his frustration would, in turn, bias the jury, declared a mistrial *sua sponte.* Upon review, we are convinced that the grant of the mistrial was an abuse of discretion by the trial judge and double jeopardy principles bar retrial of Appellants. Accordingly, we reverse the decision of the trial court and discharge Appellants.

¶ 2 The case *sub judice* requires this Court to determine whether the trial court's decision to declare a mistrial was mandated by "manifest necessity." In so doing, we revisit an issue first reviewed by the Supreme Court of the United States of America in 1824, when Justice Story, in the seminal case of *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824), stated:

> We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circum-

stances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

¶ 3 Before we proceed to the analysis of this case, we will recount, *in toto,* the interaction between counsel and the trial judge regarding the events that led up to the court's declaration of a mistrial without the consent of Appellants. Clearly, a full understanding of the events of the trial and the reasoning of the trial court is crucial to our resolution of this case.

¶ 4 The criminal charges in this case arose from the alleged assault of two women by Appellants at Kelly's Towne Tavern in Selinsgrove, Pennsylvania, on January 14, 1999. Appellant John Kelly was the tavern owner, Appellant Tammy Hile was Mr. Kelly's girlfriend and Appellant Chris Ernest was a tavern patron at the time of the alleged assault.

¶ 5 Trial commenced on October 30, 2000. After opening statements, the Commonwealth [1] began its case-in-chief by calling Rebekah Keister, one of the victims, to testify. Direct and cross-examination of

Ms. Keister continued the next day. During recross-examination of the victim, the Commonwealth objected, and the trial court ordered counsel into chambers for an on-the-record conference. During that in-chambers discussion, the following occurred:

THE COURT: You get yourself under control. You are an embarrassment to the profession. This is not play acting out here. This is a trial of—where we're supposed to be finding the truth. You are doing things repeatedly that you know you are not permitted to do. You are making objections that you have—I have repeatedly ruled on.

Don't get up here and start being a bombastic character in front of the jury. Don't do it.

MR. CAMPOLONGO [for the Commonwealth]: Judge -

THE COURT: I don't know—I don't know how I can control you. I really don't. You are shooting yourself in the foot with the jury.

MR. CAMPOLONGO: Judge -

THE COURT: Do not do that in my courtroom. Calmly, peacefully, professionally.

MR. CAMPOLONGO: Judge, I'm sorry if I offended the Court, and I'm certainly sorry if I shot myself in the foot. And if I did, it would be something that's an offense to justice. And if I cause anything unjust to happen here due to my incompetency, I can only ask that God forgives me for it. But I was objecting right now, Your Honor, because of a statement that was made by Counsel to the witness. I don't believe that Counsel should be testifying and making statements to the witness. He

---

1. Attorney Robert Campolongo from the Attorney General's Office conducted the prosecution of the case, not the Snyder County District Attorney.

should be asking questions. He said to her you said something different before. And I objected to that. I believe I have a right to object to Counsel making statements, particularly statements that are not true.

THE COURT: With all due respect, Mr. Campolongo, the phrase the pot calling the kettle black calls to mind. I recognize that I may be saying things that may—I just think this—this all needs to be on the record. I really do. That is—that is exactly the kind of thing that you repeatedly did, that Counsel gave you a great deal of latitude and finally did object, and which you took some umbrage at. There is absolutely no difference between what Mr. Noon did and what you have been doing repeatedly.

MR. CAMPOLONGO: I didn't state to the witness that anything was so, or I asked her if certain things were so.

THE COURT: Would you—no. With all due respect, Mr. Campolongo, your recollection is incorrect.

MR. CAMPOLONGO: Well, then I'm corrected. Then Counsel should have objected and Your Honor should have -

THE COURT: Well, they did, Mr. Campolongo, and they gave you quite a bit of latitude. Quite a bit of latitude.

MR. CAMPOLONGO: Well, I can only apologize to the Court. If I'm bombastic, I'm sorry. I suppose it's my nature. But I—I can only say that I'm trying to do my best to conduct myself in the proper fashion. And if I offended the Court, I'm sorry. I believe that my last objection was proper. Whether or not Counsel could have made objections that were also proper during my examination, I don't know if they thought that— if they thought so, they should have made those objections. And I'm sure Your Honor would have ruled.

But I don't believe that—that my last objection was improper because I think there was a declaration by Counsel, not a question, but a declaration of something. Statements which was not true, but also he shouldn't be making statements. It's almost like calling a witness a liar.

MR. NOON: I think that's what I have the right to be doing.

MS. SHAPIRO: It was not my—I said it was not my question, but from where I was sitting, it sounded like Mr. Noon was simply responding to the objection which is appropriate.

THE COURT: Agreed.

MR. CAMPOLONGO: I always—

THE COURT: Folks—your objection is overruled for the record, Mr. Campolongo. Folks,—never mind. Let's just go back out.

N.T., 10/31/00, at 100–103.

¶ 6 Upon the return to court, recross examination of Ms. Keister resumed and continued only for a few questions before it was completed. After the uneventful ending to the testimony of Ms. Keister, the court recessed for the day's lunch break. Upon return from lunch, the attorneys were called into chambers by the trial judge, where the following on-the-record discussion occurred:

THE COURT: I spent the lunch hour considering whether I should declare a mistrial sua sponte, and if I were to do so, it would be based upon my concern about my ability to preside fairly and impartially or, at the very least, my concern about how my presiding over this matter would be perceived particularly by the jury. I'm—as I sit here, I am uncertain as to what I am going to do.

MR. CAMPOLONGO: Can we go off the record for a moment?

THE COURT: No. This is going to be on the record. There is an obvious issue that needs to be addressed if I were to do that in terms of double jeopardy. The way—based upon what I've read, the way I understand it, is that if I were to declare a mistrial for the reason that I've stated, that the retrial of the Defendants would not be barred by double jeopardy. And there is Pennsylvania Supreme and Superior Court authority to that effect. My concern is that my frustration is palpable to the jury and what impact that may have on their deliberations.

I acknowledge that typically this comes up in the context of the desire to assure a fair trial for the Defendants. Very—very honestly, while I have a concern about that, I also have a concern for a fair trial for the Commonwealth, a fair trial for all parties. There is precedent for this. In fact, the most recent case that I was able to find was a 1998 Superior Court case. I guess, Ms. Shapiro, I'd like to hear from you first, if you have any thoughts on this.

MS. SHAPIRO: I'm taken completely by surprise, Judge. I have no thoughts.

THE COURT: Okay. Mr. Noon? Mr. Benson, anything?

MR. NOON: The only thing that would concern me is the last exchange was bare bone which the records won't reflect. It was pretty animated and pretty dynamic.

THE COURT: Oh, there's no question about it. No question about it. And, in fact, I had the Court Reporter pull a draft of it, and it looks pretty cool and antiseptic, but it certainly was not. Mr. Campolongo, do you have any thoughts?

MR. CAMPOLONGO: I'm not quite sure I understand what the Court is saying. The Court is saying that the—

that the Court's agitation is—might affect both sides of the case?

THE COURT: Let me be blunt. I'm so fed up with your crap that I don't know if I can preside fairly in this matter. How's that?

MR. CAMPOLONGO: Well, that's certainly in plain English, and I appreciate your honesty, although I can't quite understand what you mean.

THE COURT: Well, it's interesting, Mr. Campolongo. You know, I often do—oh, I'd better just shut up. Go ahead.

MR. CAMPOLONGO: I have the greatest respect for this Court, and I didn't perceive the Court to do anything in any way improper. Understanding we're all human beings, and I think the Court may have some—some feelings against me which may be—I don't know—may be justified, and you're entitled to that. And I respect you for it. But I don't know that that's a reason to—to disqualify yourself. But I would leave that to the Court. I wouldn't presume to tell the Court what the Court should do or how the Court should feel.

I would only suggest this—and just to change the subject. A proposal had been made earlier to dispose of this case by a guilty plea. Perhaps that would be the most logical way to dispose of this matter. And I think we had made that proposal to the Court which we have all agreed upon. And I think, you know, if we could dispose of the case in this way, according to our original agreement, that this would take—take care of all of these problems, including the problem that I just don't see how in the world we could, at the rate we're going, possibly finish this case by the end of this week.

And notwithstanding the problem that Your Honor has recently brought up, I—I understand and appreciate Your

Honor's feelings towards me. And it grieves me that Your Honor feels that way. But I continue to have the greatest respect for this Court. I think this Court is very knowledgeable. I think— I think the Court has conducted himself in a prudent manner, and indeed, in the heat of battle, both sides sometimes have to be exculpated. I think the Court has been even-handed, fair. And, you know, it's just you can't like everybody. And a lot of people don't like me, and perhaps with good reason. But that's their right. Everyone has that right.

THE COURT: The issue is not one of not liking you, Mr. Campolongo. The issue is not liking the way things have been handled in the courtroom.

MR. CAMPOLONGO: Well, I may say this to the Court, that everyone has a different style. And I know that perhaps it's more customary in this county to have a kind of low-keyed laid-back style.

THE COURT: Excuse me.

MR. CAMPOLONGO: And that—and I grant the Court that my style is somewhat more historic, and I do confess that I have an emotional nature which, in fact, during the redirect—I don't know if you noticed it or not—but in the redirect examination, I almost wept. I don't know why. But there was something there that affected me emotionally. I can't explain this to the Court except to say that I am a person with that type of—those types of feelings. I understand that my style of presenting a case is somewhat historic and the Court has said bombastic. And I appreciate the Court's dislike of this particular kind of style, and that's certainly—you have the right—I can say that you have been fair. And I believe that you were fair and just and a decent person and a fine judge.

And—and, you know, if I am deserving of criticism, constructive criticism, I'm sure will be taken. But I can assure you that nothing has been done deliberately on my part, and that whatever I do, I do hoping that justice will be served, and whatever I do, I do without any disrespect for the Court.

I—and again, I would say perhaps, I mean perhaps this is getting to be like the Arab Israeli situation where we're trying this case as though it were first degree murder with extensive cross examination by three attorneys. And we may be losing perspective, all of us, as to what is involved in this case. And I can only say that perhaps the most prudent way to dispose of this matter is the manner in which we originally suggested to the Court, not meaning any disrespect to the Court, of course, subject to the approval of the complainants. And I would discuss that with them.

I would prefer to take that course rather the course that the Court mentions because I know the Court is learned of the law, and the Court is a scholar in the law. And I have learned much since I've been in the Court, particularly regarding the Rules of Criminal Procedure and so forth during the Rule 1100. But I would say that perhaps the—and I just forgot the point I was making. But I think where I'm leading, Judge, that the—the approach of the Court, even though I may not be as knowledgeable as the Court which I most certainly am not on the law, I believe it is the Court's that may be fraught with double jeopardy problems, and that the easiest solution, and I think would be the solution that I—that I suggested now. And I think—I think doing that, I think we would have a result which proximate justice.

Indeed, in this world, that's all we can do is proximate justice. We're never going to find perfect justice, and I think if we—if we do that, the problem will be taken care of. That's my suggestion to the Court. And I make it with the greatest humility and the greatest respect of this Court, and I have—if I may be so bold as to say I have developed even an affection for this Court because of your fairness and your decency. And I—and I—I know you were fed up with me, and my wife tells me all the time. And—I understand her, too. I have affection for her, too.

THE COURT: Any other comments from anyone?

MR. BENSON: Your Honor, just for the record, I don't want—in all candor, I'm involved with these two Defendants because it's consolidated. And I know Ms. Shapiro's client has the more serious charges against him so I don't want to do anything to jeopardize that. But just for the record, Your Honor, I don't think, a mistrial is appropriate for my client who has been trying to come to trial and through other things with continuances. He's got relatively minor charges compared to the aggravated assault certainly. So for the record, I would be opposed to a mistrial. As to the plea bargains, my client's never been offered a plea bargain because the rational is if he has to take—the Commonwealth says if they have to take one case to trial, they may as well take all three. So my hands are always tied. I would consider resolving it by a plea bargain along the lines we had before.

Mr. Campolongo was even part of the case. He was opposed to it when he came into the case. If he's considering that, my client would consider that, I'm sure.

MR. CAMPOLONGO: Well, just to make it clear, what I am proposing is that the agreement that we had all agreed to, to repeat the verb, in it's original form, that would be accepted by the Judge, I believe that the Court had made some modification which may have been unacceptable to Mr. Kelly. I—

THE COURT: Let me interrupt a minute. I really don't want to talk about plea bargains right now. Ms. Shapiro? Now that you've had a couple of minutes, do you have any thoughts? If not, that's fine.

MS. SHAPIRO: No. I don't have anything.

THE COURT: Anything else, Mr. Noon?

MR. NOON: With the record re-developed, I think the Court's in a tough position. I will leave it to the discretion of the Court. But I don't think it's an easy call at this point, especially on behalf of my client. The Court has placed on the record with its frustration with the prosecuting attorney, and my only concern at this point is if we go forward, is that going to be playing into the Court's mind as far as dealing with the next steps. So -

THE COURT: Well, I've always—well, I think most judges do—pride themselves on the ability to compartmentalize things. But the—it's difficult to compartmentalize things when it's an ongoing situation. All right.

Counsel, if you would excuse me for a couple of minutes then, please.

*Id.* at 106–113.

¶ 7 Shortly after this in-chambers discussion, court was called to order without the jury present. The trial judge then immediately declared a mistrial *sua sponte*, stating:

THE COURT: A few minutes ago in chambers I advised Counsel that I had spent the lunch break considering whether I should sua sponte, on my own motion, declare a mistrial. The basis for that consideration on my part was my concern about my ability to—a couple of concerns: My ability to preside fairly and impartially in this matter and/or how I would be perceived and particularly as by the jury, whether I would be perceived as presiding fairly and impartially in this matter. My sense of frustration, I believe, has been obvious to everyone in the courtroom. I have expressed that frustration at sidebar, in chambers. I suspect that there may have been one or two expressions of it in open court in front of the jury. And even if they weren't in words, in all honesty, I must say that I suspect that they have detected it.

The issue of a mistrial typically comes up in the context of a Judge acting to assure a fair trial for a Defendant or Defendants. I would see no reason why that same concern should not be afforded the Commonwealth, although I acknowledge that when there is any doubt as to the manifest [necessity] of declaring a mistrial, that doubt must be resolved in the Defendant's favor. The mistrial would come about if I were to recuse myself based upon my concerns about my ability to adjudicate this matter impartially.

There are lesser steps that can be taken, cautionary instructions to Counsel. And let me be blunt about it. My frustration, as I've said—it needs to be part on the record. My frustration, in all honesty, has been with Counsel for the Commonwealth in this matter, and his manner in which he has conducted the case on behalf of the Commonwealth. That frustration has been voiced in pretrial proceedings as well.

And I say that on the record not in any effort at all or any desire to embarrassment Mr. Campolongo, but rather so that the record will be complete. There are lesser options that I have considered. One of those was simply to go forward with a greater effort to, if you will, maintain a flat affect in the presence of the jury. Another option that I found myself considering before—this morning before I even thought about a mistrial, was the need for me to give a cautionary instruction to the jury during the final instructions.

There is language in the final instructions to the effect that the jury must make their determination based upon the facts and the law and not on which attorney made the better speech, nor on which attorney they liked better. And I contemplated giving a supplemental instruction there to the effect that any opinion which they may feel that I have expressed or demonstrated should not play any role in their deliberations. I also note that the case law is such that a Court does not need to declare a mistrial where the bias of the Court has never infected the jury.

I think most judges pride themselves on their ability to compartmentalize and to have things frustrate them, anger them, sicken them, whatever, whether it's the acts themselves, the individuals involved, the—I mean the alleged criminal acts themselves, the parties involved, the Defendant, and/or on rare occasion, the behavior of one or more individuals in the courtroom or conduct of attorneys. I found myself questioning my own ability to do that in this case. And I—I have really struggled with this. And this typically happens when I have a discussion such as this, I will look at things and finally something will just hit

me and it will, if you will, make my decision for me.

The concerns I have about my own ability at this point, and I confess a feeling that I have failed in my responsibilities here and is a significant source of embarrassment. Mr. Noon has raised a concern in chambers about whether having recognized or given voice to concerns about how my rulings are being perceived and whether I might try to, if you will, overcompensate or be—or overly fair if such a concept exists, to the Commonwealth in an effort to make certain that I am not ruling on the basis of my reactions as opposed to the law and the facts. That is a valid concern.

I have also considered the impact this will have on the Defendants. It is an obvious source of frustration, to put it mildly, for them to seek their day in court and then have that day forestalled. It is an obvious expense to both the Defendants and the Commonwealth. Certainly, it is a source of frustration at the very least, for everyone, including the complaining witnesses in this matter.

But the thing that I keep coming back to, and the thing that finally when I looked at it at one point made my decision for me is this: When a Judge— when judges doubt their own ability to adjudicate impartially, they should recuse themselves. I find myself for the first time in my career doubting—questioning—questioning whether in this case, I could adjudicate impartially. I would like to think that I could, but when I expressed concerns in my own thoughts about whether I would be ruling impartially, thinking I'm ruling one—for one reason when perhaps I might be ruling for another. That, to me, is a statement that I am doubting my own ability to adjudicate impartially. We are to question constantly our ability to do so. But my concern at this point

goes beyond doubt, and, frankly, to a point where there is a concern about whether that doubt would be—whether, in fact, I may actually be doing it.

I have indicated a great sense of personal failure. I suppose that I shouldn't feel that way because that is exactly what the rules and the case law require judges to do. Recognizing that judges are human—although sometimes I suspect that some attorneys think that I think I'm not—but recognizing our humanity and therefore our frailties and fallibilities that we need to give voice to that, recognize that, and do justice.

For all of that—for all of those reasons, I will enter the following order: And now, this 31st day of October, 2000, for the reasons stated on the record— before I go there, Ms. Shapiro, is there anything you would like to say at this point?

MS. SHAPIRO: No, Your Honor.

THE COURT: Mr. Noon?

MR. NOON: No, Your Honor.

THE COURT: Mr. Benson?

MR. BENSON: No, Your Honor.

THE COURT: Mr. Campolongo, beyond what has been—. you have expressed in chambers, anything else?

MR. CAMPOLONGO: No, Your Honor.

THE COURT: We will enter the following order: And now, this 31st day of October, 2000, for the reasons stated on the record, the Court hereby sua sponte declares a mistrial in these matters. By the court.

*Id.* at 113–118.

¶ 8 The court then called the jury into the courtroom and informed them that a mistrial had been declared. He explained his reasons for granting a mistrial to the jury as follows:

THE COURT: Members of the jury, I have declared a mistrial in this matter. This trial is concluded. I feel that I owe you an explanation as to why that has occurred.

I have done that on my own motion. Counsel have not asked me to do so. I have done it for this reason: I have questioned my ability to preside in this matter fairly and impartially. It is my obligation to do so. Obviously my sense of frustration has been visible in the courtroom. It has been expressed on occasion. I am sure that you have seen it.

One of my concerns is how that may impact— the possibility that it may impact you in your decision-making. When this matter—when these matters were presented for you to deliberate, whether what had taken place in this courtroom beyond the testimony of the witnesses and the law as I would instruct you upon, whether that would in some way influence you, and it cannot. And we cannot run the risk that it would.

When a Judge believes—has concerns, and it would be easier if I simply read the law, the brief law to you: When Judges doubt their ability to adjudicate impartially, they should recuse themselves. Recuse means remove themselves from the case. And obviously if I were to remove myself from this case, we can't—we can't resume this case with another judge. We can't resume this trial.

I will tell you that as I have told the attorneys, I am mightily embarrassment by the position I find myself in. But on the other side of the coin, the law recognizes that all of us, including Judges, are human, and that we all sometimes have to recognize those human abilities, and frankly, my— my concern about my level of frustration was such that I could not run the risk that it would influence you or me.

And for those reasons, I have entered an order prior to you coming back into the courtroom declaring a mistrial. Your service in this case, these cases, these three cases is over. If you are scheduled to serve on any other juries, your service on those juries continues, but there will be no further proceedings in these matters. You are discharged. You are free to go with the thanks and the apologies of the Court. Thank you.

*Id.* at 118–119.

¶ 9 Later, the Commonwealth initiated a new prosecution of Appellants. In response, each Appellant filed a motion to dismiss and bar any reprosecution on the grounds that a second prosecution would violate the double jeopardy provisions of the federal and Pennsylvania constitutions. The Appellants claimed that the mistrial was intentionally caused by prosecutorial misconduct and, in the alternative, was not manifestly necessary.

¶ 10 Upon reviewing the case, the trial court determined that the record refuted the conclusion that the Commonwealth intentionally acted to undermine Appellants' right to a fair trial. Trial Court Opinion, 1/8/01, at 6.[2] Further, the court concluded that the trial judge did not abuse his discretion by declaring a mistrial based upon his concern that he could not act impartially towards the Commonwealth. *Id.* at 11. Consequently, the trial court rejected Appellants' double jeopardy motions. Appellants then filed this timely appeal.

**2.** The Honorable Louise Knight ruled upon Appellants' double jeopardy motions. She was not the judge who had previously declared the mistrial *sua sponte.*

¶ 11 Presently, Appellants contend that the manifest necessity required for the *sua sponte* declaration of a mistrial did not exist in this case. Consequently, Appellants assert that the trial judge abused his discretion in *sua sponte* granting a mistrial in their cases, and the double jeopardy provisions of the United States and Pennsylvania Constitutions would be violated by compelling them to undergo a second trial in this matter. It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. *Commonwealth v. Leister*, 712 A.2d 332, 334 (Pa.Super.1998), (citing *Commonwealth v. Gains*, 383 Pa.Super. 208, 556 A.2d 870 (1989)); Pa.R.Crim.P. 1118(b) (amended and renumbered as Rule 605, effective April 1, 2001). Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte*, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial. *Leister*, 712 A.2d at 335, (citing *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976)).

¶ 12 In *Commonwealth v. Diehl*, 532 Pa. 214, 615 A.2d 690, 691 (1992), our Supreme Court, when considering whether manifest necessity for the trial court's *sua sponte* declaration of a mistrial existed, stated:

> Since Justice Story's 1824 opinion in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on where there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated.

*Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976), citing *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980).

Pennsylvania Rule of Criminal Procedure 1118(b) provides that:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *Commonwealth v. Stewart*, 456 Pa. 447, 452, 317 A.2d 616, 619 (1974), citing *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. *Commonwealth, ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976). Finally,

it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Bartolomucci*, 468 Pa. at 347, 362 A.2d 234.

We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. "Rather, 'varying and often unique situations aris[e] during the course of a criminal trial ... [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated .... '" *Leister*, 712 A.2d at 335, quoting *Illinois v. Somerville*, 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973); *Commonwealth v. Morris*, 773 A.2d 192, 194 (Pa.Super.2001). The trial judge, who is the foremost authority in his or her courtroom, is usually in the best position to determine the necessity of recusal in any individual case. *Leister*, 712 A.2d at 335, citing *Wade v. Hunter*, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949) and *In Interest of Morrow*, 400 Pa.Super. 339, 583 A.2d 816, 818 (1990); *Morris*, 773 A.2d at 194. This principle assumes great weight when the issue involves how the presentation of evidence or the conduct of parties affects a trial's fact-finder. *Leister*, 712 A.2d at 335, citing *Arizona v. Washington*, 434 U.S. 497, 514, 98 S.Ct. 824, 834–35, 54 L.Ed.2d 717 (1978) and *Commonwealth v. Smith*, 321 Pa.Super. 51, 467 A.2d 888, 891 (1983); *Morris*, 773 A.2d at 194.

¶ 13 Judge Knight, in considering the propriety of the trial judge's actions in this case, applied the foregoing standards in reviewing the record and then ruled, as follows:

We perceive that the record demonstrates that the trial court weighed all the considerations articulated in the case authority cited in this Opinion. Certainly, the trial court considered less drastic measures, as well on the impact of a mistrial on Defendants and their double jeopardy protections. The trial judge clearly expressed his concern that his frustration with Attorney Campolongo was discernible by the jury. Simply reading the transcript does not afford the reviewing court the ability to ascertain the trial environment and atmosphere. We trust and certainly defer to the trial judge's observations that the exchanges between trial counsel and especially the interactions between the prosecutor and the trial judge were animated and volatile. Case authority supports the proposition that the trial judge is in the best position to ascertain the courtroom environment, the demeanor of the trial participants and the collective effect on the jury.

The most important consideration, however, is that the trial judge sincerely and openly doubted his ability to fulfill his duties as the presiding judge in this trial as a result of what he characterized as unprofessional conduct by the prosecutor. While the trial judge was not the fact-finder in this trial, he was not a passive observer of the proceedings. The trial judge is called upon throughout a trial to render procedural, evidentiary and substantive rulings. Such rulings must be the product of impartial and unbiased application of the facts to the pertinent legal authority absent any hint of influence produced by annoyance or impatience. None of the parties have alleged or even suggested that the trial judge, to the point of the declaration of the mistrial, exhibited impartiality [sic] in its rulings. However, the trial court sincerely and eloquently expressed its concern to continue in such a fashion.

Trial Court Opinion, 1/8/01, at 11–12.

¶ 14 In so ruling, Judge Knight relied heavily on the recitation of the law set

forth in *Leister*, 712 A.2d at 335, wherein we stated:

> When judges doubt their own ability to adjudicate impartially, they should recuse themselves. *Commonwealth v. Boyle*, 498 Pa. 486, 490, 447 A.2d 250, 252 (1982); *In Interest of Morrow*, 583 A.2d at 819. Such an inability to be objective creates a manifest necessity for the declaration of a mistrial, particularly when a judge must exert the broad discretion that a bench trial demands. [*Commonwealth v. Smith*, 321 Pa.Super. 51, 467 A.2d 888 (1983)]. *See also Commonwealth v. Berrigan*, 369 Pa.Super. 145, 535 A.2d 91 (1987) (holding that while a judge need not have declared a mistrial where his bias never infected the jury, necessity required his recusal during sentencing to allow 'one without hint of animosity toward Appellant' to exercise such 'largely unfettered ... discretion.'). *Id.* 535 A.2d at 104.

* * *

 Even though the trial judge's decision to declare a mistrial under these circumstances is entitled to great deference, *See Arizona*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), our inquiry does not end there. A judge must still exercise 'sound discretion' in declaring a mistrial by considering those factors contributing to the trial problem as well as possible remedies less drastic than a mistrial. *Diehl*, 532 Pa. at 217, 615 A.2d at 691. Indeed, it is when the '... judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling [that] close appellate scrutiny is appropriate.' *Arizona*, 434 U.S. at 510 n. 28, 98 S.Ct. at 832–33 n. 28, 54 L.Ed.2d 717.

Certainly, before jeopardy attaches, judges must recuse when they believe that they cannot fairly and impartially hear a matter. *Commonwealth v. Boyle*, 498 Pa. 486, 447 A.2d 250 (1982). Undoubtedly, as was the case in *Leister*, when a judge, **sitting as the finder of fact**, is unable to proceed impartially with respect to the defendant, a mistrial is manifestly necessary to ensure justice. *Leister*, 712 A.2d 332 (mistrial was manifestly necessary where trial judge, sitting as finder of fact, recognized that he was possibly biased against the defendant); *Morris*, 773 A.2d 192 (same); *Smith*, 321 Pa.Super. 51, 467 A.2d 888 (same); *Commonwealth v. Africa*, 281 Pa.Super. 419, 422 A.2d 539 (1980) (same); *State v. Pierce*, 459 A.2d 148 (Me.1983) (same); *State v. Puckett*, 92 Ariz. 407, 377 P.2d 779 (1963) (same); *cf.*, *Simmons v. United States*, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968 (1891) (mistrial necessary where member of jury was a friend of the defendant, thus, raising a question of the jury's impartiality); *Gains*, 383 Pa.Super. 208, 556 A.2d 870 (mistrial was manifestly necessary where judge determined that a juror was exposed to prejudicial information about defendant's wife who was the apparent victim and possibly prejudicial information about the defendant himself); *Mooberry v. State*, 157 Ind.App. 354, 300 N.E.2d 125 (1973) (mistrial was manifestly necessary where judge determined that two jurors were acquainted with the prosecuting witness).

¶ 15 However, the present case involved a jury trial, therefore the trial judge was not acting as the finder of fact. Accordingly, we are not convinced that the trial judge's obvious frustration with the "bombastic" prosecutor and concern that he might appear biased against the Commonwealth, without clear impact on the jury, would support a determination of manifest necessity. Instantly, we are not concerned with the ordinary considerations present when recusal is requested before jeopardy has attached. Neither are we concerned with the situation when a trial judge, act-

ing as the finder-of-fact, becomes prejudiced against a party. Rather, our concern must focus upon whether the trial judge's anger with the prosecution would have precluded **the jury** from rendering an **impartial verdict**, such that the manifest necessity for the *sua sponte* declaration of a mistrial was present. *Illinois v. Somerville*, 410 U.S. at 464, 93 S.Ct. at 1070.

¶ 16 Once again, we reiterate that the *Perez* doctrine commands trial judges not to foreclose a defendant's option to continue with the trial until a scrupulous exercise of judicial discretion leads to the conclusion that manifest necessity is present. *United States v. Jorn*, 400 U.S. at 485, 91 S.Ct. at 557. Of paramount concern is the defendant's right to retain primary control over the course to be followed in the event of prosecutorial or judicial error in order to protect his valued right to have his trial completed in a particular tribunal. *United States v. Dinitz*, 424 U.S. at 609, 96 S.Ct. at 1080; *United States v. Jorn*, 400 U.S. at 485, 91 S.Ct. at 557; *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963). Most importantly, any doubt regarding the propriety of the declaration of a mistrial must be resolved in favor of the defendant, and a mistrial should be declared *sua sponte* "only in very extraordinary and striking circumstances." *Downum v. United States*, 372 U.S. at 736, 83 S.Ct. at 1034, (quoting *United States v. Coolidge*, 25 F.Cas. 622, 623; *Downum*, 372 U.S. at 738, 83 S.Ct. at 1035; *Diehl*, 615 A.2d at 691; *Leister*, 712 A.2d at 335).

¶ 17 Undoubtedly, "[n]either party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, 'the public's interest in fair trials designed to end in just judgements' must prevail over the defendant's 'valued right' to have his trial concluded before the first jury impaneled." *Arizona v. Washington*, 434 U.S. at 516, 98 S.Ct. at 835–36; *Wade v. Hunter*, 336 U.S. at 689, 69 S.Ct. at 837.[3] However, we are not now concerned with the situation where an unscrupulous defense counsel attempts to take unfair advantage of double jeopardy protections by improperly creating juror bias against the prosecution and then contesting the trial court's power to declare a mistrial. *See Arizona v. Washington*, 434 U.S. at 513, 98 S.Ct. at 834. Certainly, the prosecution is entitled to a fair trial, but we conclude that it is not automatically entitled to a mistrial where its own conduct, albeit unintentional, causes the trial court to question its own impartiality and, more significantly, that of the jury. To automatically grant a mistrial whenever the prosecution, through its trial conduct, is "shooting [itself] in the foot with the jury," the trial judge would often, in effect, be unconstitutionally exercising his authority to help a prosecution that is going badly by affording the state another more favorable opportunity to convict the accused. *Gori v. United States*, 367 U.S. 364, 369, 81 S.Ct. 1523, 1526–1527, 6 L.Ed.2d 901 (1961). That is why a scrupulous inquiry into whether a mistrial is manifestly necessary requires the trial

**3.** It is also within the trial court's discretion to declare a mistrial *sua sponte* when "the ends of public justice would otherwise be defeated[,]" as set forth in *United States v. Perez*, 22 U.S. at 580. "The ends of public justice" or, more precisely, "the public's interest in fair trials designed to end in just judgments," *Illinois v. Somerville*, 410 U.S. at 463, 93 S.Ct. at 1070, quoting from *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, is negatively impacted when a prejudicial element is injected or discovered at trial. In such a situation, a mistrial serves to eliminate the prejudicial element and foster a just judgment. *See generally, Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975).

court to consider rigorously less drastic options to resolve any doubt of the propriety of a mistrial in favor of the defendant. While the public certainly has an interest in a competent prosecution of a criminal case, we hold that a mistrial is not manifestly necessary when the trial court believes, as it did in the present case that the prosecutor is "shooting [himself] in the foot with the jury." Clearly, if the Commonwealth makes mistakes which damage its prosecution, it is not entitled to a second bite at the apple due to its poor performance. *See, e.g., Downum v. United States,* 83 S.Ct. at 1035–1036, 372 U.S. at 737–738 (trial of defendant by a second jury, after the jury first empanelled had been sworn and discharged because a prosecution witness had not been served a summons and because no other arrangements had been made to ensure the witness' presence violated the constitutional guarantee against double jeopardy); *cf., Gori v. United States,* 367 U.S. at 369, 81 S.Ct. at 1526–1527 (double jeopardy protections prohibit a judge from exercising his authority to grant a mistrial at a trial which is going badly for the prosecution to afford the state another more favorable opportunity to convict the accused).

¶ 18 Presently, as found by Judge Knight, the trial judge was extremely frustrated with the prosecuting attorney and was concerned that his frustration might prejudice the jury. Although the disruptive nature of Attorney Robert Campolongo's actions does not appear on the face of the record, we, nevertheless, are certain that the trial court's frustration was genuine, as was its concern that its reactions to the prosecutor might bias the jury against the Commonwealth. That said, it is not a foregone conclusion that the trial court properly ordered a mistrial. Before the trial court could order a mistrial it was duty bound to inquire whether lesser sanctions than a mistrial could solve the problems caused by Attorney Campolongo.

■ ¶ 19 Upon review, we conclude that the trial court acted prematurely in ordering a mistrial. In other words, manifest necessity for a mistrial was not demonstrable at the time the court *sua sponte* ended the trial. We do not believe the trial court adequately considered other less severe options before compelling Appellants to forfeit their right to have the trial completed and to undergo another prosecution. When we review the trial court's discussion of the situation with counsel, we observe that the court did state that it considered various options to a mistrial, including: 1) "go[ing] forward with [the trial] with a greater effort to, if you will, maintain a flat affect in the presence of the jury[;]" and 2) giving cautionary instructions to the jury. N.T., 10/31/00, at 114–115.[4] However, we note that the trial court never explained why implementation of those options would not be adequate to ensure that the jury could decide the case impartially.

¶ 20 Presently, the trial court conducted a brief in-chambers discussion with counsel and chastised Attorney Campolongo for his "bombastic" litigation style and direct-

---

4. The trial judge indicated the type of instructions that he contemplated giving when he stated:

> There is language in the final instructions to the effect that the jury must make their determination based upon the facts and the law and not on which attorney made the better speech, nor on which attorney they liked better. And I contemplated giving a supplemental instruction there to the effect that any opinion which they may feel that I have expressed or demonstrated should not play any role in their deliberations. I also note that the case law is such that a Court does not need to declare a mistrial where the bias of the Court has never infected the jury.
>
> N.T., 10/31/00, at 115.

ed him to cease the behavior. Trial resumed and continued without incident until the lunch recess. Immediately before the trial resumed, the court again discussed the situation with counsel outside of the presence of the jury, and he indicated that he was considering granting a mistrial. All of the parties were surprised when presented with the news that the trial court might declare a mistrial because of his frustration with Attorney Campolongo, and none desired a mistrial. *Id.*, at 107, 111–112.[5] Significantly, in response to the judge's statement that he was concerned that he could not continue to act impartially with respect to the Commonwealth, the prosecution stated several times that it believed that the trial court was ruling fairly in the case as issues arose. *Id.* at 108, 109, 111. Upon return of the jury, the court declared a mistrial. Against that backdrop, we conclude that the trial court's determination, undoubtedly made in subjective good faith, that if the trial continued, the jury could not render an impartial verdict, was mere speculation, and he did not exhaust viable options other than a mistrial. As the Fourth Circuit Court of Appeals stated in *United States v. Sloan,* 36 F.3d 386 at 400–01:

> '[S]peculation ... cannot serve as a basis for manifest necessity.' *United States v. Allen,* 984 F.2d 940, 942 (8th Cir.1993). Thus, '[e]ven if the trial judge believes in subjective good faith that a mistrial is called for,' an appellate court 'must reverse if the record belies

his concerns.' *United States v. Meza–Soria,* 935 F.2d 166, 171 (9th Cir.1991). As the Supreme Court has explained, when 'the record reveals that the trial judge has failed to exercise the "sound discretion" entrusted to him, the reason for deference [to his discretion] by an appellate court disappears.' *Washington,* 434 U.S. at 510 n. 28, 98 S.Ct. at 832 n. 28.

Importantly, we note that the trial court did not give Attorney Campolongo a chance to bring his trial conduct within the normal bounds of zealous litigation.[6] Rather, the mistrial was declared after only a brief continuation of the trial, during which Attorney Campolongo objected only once. While it is clear, in light of the judge's comments, that he had thought about options other than a mistrial, the somewhat abrupt and surprising announcement of the possibility of a mistrial lends credence to Appellants' argument that the court did not adequately consider other options. *See Lovinger v. Circuit Court,* 845 F.2d 739, 746 (7th Cir.1988) (where record indicated that court showed some frustration with the prosecution, but nothing indicated his contemplation of a mistrial, mistrial was improper when, following a short recess, the court proceeded with a lengthy and unexpected summary of his displeasure with the conduct of the trial and granted a mistrial without proper consideration of other options).

---

5. We note that Appellants' silence with respect to the entry of a mistrial by the trial judge was not tantamount to *de facto* consent to the entry of the mistrial and did not amount to a waiver of their double jeopardy claims. *Commonwealth v. McCord,* 700 A.2d 938, 942 (Pa.Super.1997); *Weston v. Kernan,* 50 F.3d 633, 637 (9th Cir.1995); *Lovinger v. Circuit Court,* 845 F.2d 739, 744 (7th Cir. 1988), *cert. denied,* 488 U.S. 851, 109 S.Ct. 136, 102 L.Ed.2d 108 (1988).

6. There is some indication in the court's comments that it had previously felt concerned about Attorney Campolongo's litigation style during preliminary proceedings. However, what these concerns were and what, if anything, was done about them is not apparent in the record.

¶ 21 In the present case, the judge's concern about his ability to preside impartially must be weighed against the defendants' constitutional right to have the case decided before the particular jury empanelled. As the Court of Appeals of Michigan stated in *People v. Little,* 180 Mich. App. 19, 27–28, 446 N.W.2d 566, 569 (1989) (footnote omitted):

> It must be remembered that here the appearance of partiality that the trial judge was concerned with was *against the prosecutor,* not against the defendant. The grievance was filed against the assistant prosecutor, not against defense counsel. While we recognize the desirability of avoiding the appearance of judicial partiality whenever possible, this potential for the appearance of judicial partiality must be balanced against the deprivation of defendant's "valued right to have his trial completed by a particular tribunal."

¶ 22 We are convinced that less severe remedies than a mistrial existed in this case at the time the mistrial was declared. The court could have threatened Attorney Campolongo with contempt, should he not curb his "volatile" style of litigation or, even, removed Attorney Campolongo as prosecuting attorney. *Cf., Rubenfeld ex. rel. Walters v. Appelman,* 230 A.D.2d 911, 912, 646 N.Y.S.2d 879, 881 (1996) (instead of granting a mistrial *sua sponte* after the trial court became irritated with defense counsel, the trial court could have called a side bar and imposed sanctions or threatened to punish defense counsel for contempt); *United States v. Bristol,* 325 A.2d 183, 187 n. 4 (D.C.1974) (where counsel's trial conduct bordered on being obnoxious and was undoubtedly frustrating to the trial court, other means of censure and discipline other than mistrial were available to the court; consequently, *sua sponte* mistrial was not manifestly necessary).

¶ 23 In the case before us, we cannot permit the trial court's frustration with the prosecution, although genuinely felt, to violate Appellants' constitutional right to have their trial completed before the first jury empanelled. Manifest necessity for the declaration of a mistrial *sua sponte* by the trial court simply was not present in this case. There were less drastic options available to the court which, if tried, might have solved the problems caused by the prosecutor's conduct and the court's reaction to it. Only after trying these options and finding that they were not sufficient to ensure the jury's ability to preside impartially could the trial court declare a mistrial based upon manifest necessity. It is absolutely crucial to remember that when reviewing the grant of a mistrial *sua sponte,* "[w]e resolve any doubt 'in favor of the liberty of the citizen, rather than exercise what could be an unlimited, uncertain, and arbitrary judicial discretion.'" *Commonwealth ex rel. Walton v. Aytch,* 352 A.2d at 8 (citations omitted).

¶ 24 We recognize the trial judge's honest concern about the appearance of bias on his part against the Commonwealth and its possible effect on the jury. However, since there remained the real possibility that the negative impact of the court's opinion of the Commonwealth's style of prosecution could have been prevented and that the jury could have ruled impartially, in spite of the trial judge's frustration, we do not believe that Appellants' valued constitutional right to have their trial completed before the first jury empanelled should have been subordinated to the public interest, especially where neither the Commonwealth nor the defense concurred in the court's decision. Consequently, further prosecution of Appellants would violate the double jeopardy protections of the Pennsylvania and United States Constitutions.

¶ 25 Order reversed. Case remanded with directions that the defendants be discharged. Jurisdiction relinquished.