J-S46004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :             PENNSYLVANIA
                                      :
              v.                        :
                                        :
                                        :
STEVEN AUSTIN                     :
                                        :
             Appellant            :    No. 944 EDA 2017

Appeal from the Judgment of Sentence October 1, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011440-2011

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:              **FILED NOVEMBER 14, 2018**

Steven Austin appeals from the judgment of sentence of seven to fourteen years imprisonment after he was convicted of possession with intent to deliver a controlled substance ("PWID").  We affirm.

The trial court summarized the history of this case as follows:

> On September 1, 2011, at approximately 1:25 p.m., police officers from the Narcotics Field Unit set up surveillance in the area of 5600 Chester Avenue in the city and county of Philadelphia for a narcotics investigation. Parked facing eastbound in a gold Ford Taurus, two officers from the Narcotics Field Unit observed a black Volkswagen Jetta, with the engine running, parked on the north side of the 5600 block of Chester Avenue occupied by a white male in the driver's seat.  A short time later, the officers observed [Appellant] walking westbound on Chester Avenue while cradling, similar to how a football is held, a torn brown paper lunch bag.  The officers then observed [Appellant] enter the front passenger side of the black Volkswagen. Upon [Appellant's] entering the Volkswagen, the vehicle pulled off and proceeded westbound on Chester Avenue.  When the Volkswagen pulled off, the officers from the Narcotics Field Unit made a U-turn and proceeded to follow the Volkswagen containing [Appellant] westbound on Chester Avenue.  The Volkswagen turned right, or

northbound, onto 57th Street from Chester Avenue, followed by the narcotics officers behind the Volkswagen with [Appellant].

While following the Volkswagen, the narcotics officers observed that the taillights of the Volkswagen did not operate correctly. When the Volkswagen came to rest at a stop sign, the vehicle would stop, but the taillights did not come on. The inoperable taillights provided the probable cause for the officers to stop the vehicle. The narcotics officers then placed a call over the police radio to the 12th District requesting a marked police unit initiate a traffic stop of the Volkswagen. A responding marked police unit initiated a traffic stop on the 1200 block of South 58th Street and the Volkswagen pulled over. As officers approached the Volkswagen, [Appellant] in the front passenger seat was observed making a dipping motion towards the center console of the vehicle.

An officer from the Narcotics Field Unit approached the vehicle on the front passenger side and observed in plain view the same brown paper bag [Appellant] had in his possession on Chester Avenue between the driver and passenger seats. While following the Volkswagen from the 5600 block of Chester Avenue, the officers never observed any brown paper bag being tossed from the Volkswagen. The narcotics officer was able to observe through the passenger window through tears in the brown paper bag a white powder contained in a clear bag and approximately 200 unused green bags consistent with the packaging of narcotics. After observing the suspected cocaine in plain view, the officers asked [Appellant] to step out of the vehicle. [Appellant] was hesitant to remove himself from the passenger seat of the vehicle and stated to one of the officers present on the scene that he did not want to go to jail.

[Appellant] was asked to step to the rear of the vehicle while officers from the Narcotics Field Unit continued with the search of the Jetta. Officers recovered from the brown paper bag 53.436 grams of cocaine with a street value of $7,000-14,000 depending on the quantity in which it[ is] sold; multiple unused green bags consistent with the packaging of narcotics; 50 Endocet pills and 25 Watson pills; and an electronic scale. [Appellant], while at the rear of the car with other officers, resisted when officers attempted to place him into custody. [Appellant] was pepper-sprayed, secured into custody and charged.

Trial Court Opinion, 9/18/17, at 1-3 (citations omitted).

Appellant filed a pretrial motion to suppress all physical evidence seized from his person or vehicle. The motion was denied after a hearing, and the case proceeded to a jury trial. Upon evidence of the facts detailed above, the jury convicted Appellant of PWID on June 1, 2015, and the trial court sentenced him on October 1, 2015, to seven to fourteen years confinement.

Appellant filed a timely post-sentence motion, claiming that his suppression motion should have been granted and his sentence was unreasonable. The motion was denied by operation of law with no subsequent appeal. Appellant's direct appeal rights were reinstated *nunc pro tunc* through a petition filed pursuant to the Post Conviction Relief Act, and this timely appeal followed.

Appellant presents the following questions for our consideration.

A.   Whether the trial court erred in failing to declare a mistrial after the prosecution argued in closing that the jury was required to convict [Appellant] because drugs are ruining Philadelphia.

B.   Whether the trial court erred in failing to require the Commonwealth to produce the handwritten notes from which the Commonwealth's main police witness testified during the motion to suppress hearing[.]

Appellant's brief at vii.

With his first issue, Appellant contends that the trial court erred in not *sua sponte* declaring a mistrial based upon the prosecutor's remarks during

- 3 -

closing arguments. Appellant's brief at 1-6. We begin with a review of the applicable law.

"It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." *Commonwealth v. Kelly*, 797 A.2d 925, 936 (Pa.Super. 2002); *see also* Pa.R.Crim.P. 605(B). "A trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Powell*, 171 A.3d 294, 301 (Pa.Super. 2017) (quoting *Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa.Super. 2014)).

Where, as here, the mistrial is based upon prosecutorial misconduct,

it is within the discretion of the trial court to determine whether a defendant has been prejudiced by misconduct or impropriety to the extent that a mistrial is warranted. A new trial is warranted where the unavoidable effect of the conduct or language was to prejudice the factfinder to the extent that the factfinder was rendered incapable of fairly weighing the evidence and entering an objective verdict. We have held the Due Process Clause is not a code of ethics for prosecutors; its concern is with the manner in which persons are deprived of their liberty. As such, the touchstone is the fairness of the trial, not the culpability of the prosecutor.

*Id*. at 301-02 (cleaned up).

The comments at issue, made near the end of the Commonwealth's closing argument, were in response to Appellant's argument that there was no evidence that Appellant delivered the bag of drugs to another person:

> I don't have to prove that. I just have to prove that he possessed that bag and there were those drugs in that bag and that those drugs were possessed with the intent to deliver. That is the difference. That is the difference. And the only verdict, the only verdict that you could possibly find is guilty because these drugs are literally ruining Philadelphia. These items here -- these drugs.

N.T. Trial, 6/1/15, at 109-10.

Appellant objected, stating "Objection to what's ruining Philadelphia. That's not the issue at hand here." *Id*. at 110. The trial court sustained the objection. *Id*. Appellant did not request further relief, such as a mistrial or a curative instruction. The first time Appellant raised the issue was in his statement of errors complained of on appeal.

Appellant contends that the trial court should have declared a mistrial *sua sponte*. It is unquestionable that a trial court has the power to declare a mistrial *sua sponte*. *See Commonwealth v. Morris*, 773 A.2d 192, 194 (Pa.Super. 2001). However, the appellate authority concerning *sua sponte* mistrials considers whether the trial court's exercise of that power was proper (*i.e.*, whether there was manifest necessity to do so), for if not, double jeopardy prohibits the retrial of the defendant. *Id*. The cases do **not** set forth standards for when that power should be employed in the first place, let alone indicate that this Court should ever review a trial court's decision not to grant a mistrial *sua sponte*.

As Appellant cites no authority to suggest that he was relieved of his duty to request the declaration of a mistrial in order to preserve the issue for our review, we conclude that that duty remained squarely with Appellant.

Hence, because Appellant did not raise the issue in the trial court, he failed to preserve the issue for our review. *See*, *e.g.*, *Commonwealth v. Jones*, 460 A.2d 739, 741 (Pa. 1983) (concluding claim that the defendant was deprived of a fair trial by the prosecutor's misconduct during arguments was waived "because defense counsel immediately objected (which objection was sustained), but made no request for mistrial or curative instructions"); *Commonwealth v. Sandusky*, 77 A.3d 663, 670 (Pa.Super. 2013) ("Sandusky did not move for a mistrial or request a curative instruction; he merely lodged an objection. As such, this claim is not preserved for appellate review."). No relief is due.[1]

Appellant's remaining issue challenges the suppression court's determination as to one of the Rules of Evidence. "Generally, an appellate court's standard of review of a trial court's evidentiary rulings is whether the trial court abused its discretion; however, where the evidentiary ruling turns on a question of law our review is plenary." *Commonwealth v. Woeber*, 174 A.3d 1096, 1100 (Pa.Super. 2017) (internal quotation marks and citation omitted).

---

[1] In any event, the trial court opined that there was no manifest necessity to declare a mistrial, as it "made careful effort to: (1) place the burden of proof squarely on the Commonwealth; (2) outline the law and elements of the offense; and, (3) instruct the jury to render a verdict without bias based only on the evidence presented." Trial Court Opinion, 9/18/17, at 11.

Appellant claims that the trial court erred in neglecting to compel the Commonwealth to produce copies of notes used by Officer Rick Williams during his testimony at the suppression hearing. Appellant's brief at 6-7. Specifically, Appellant contends that production of the notes, or their inspection by the court *in camera*, was mandated by Pa.R.E. 612. *Id*. at 7-10.

The Commonwealth argues that Appellant did not preserve this issue for appeal. It asserts that, at the suppression hearing, Appellant claimed that it was entitled to the document because the defense was entitled to "anything the officer writes down." Commonwealth's brief at 20. The Commonwealth insists that "at no time in the court below did [Appellant] ever claim that he was entitled to see Officer Williams'[s] notes because he had supposedly used them to 'refresh his recollection,' and at no time did he cite Pa.R.E. 612." *Id*.

Rule 612 provides that "[i]f a witness uses a writing or other item to refresh memory while testifying, an adverse party is entitled to have it produced at the hearing, trial or deposition, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony." Pa.R.E. 612(b)(1). Further, "[i]f the producing party claims that the writing or other item includes unrelated matter, the court must examine it in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record." Pa.R.E. 612(c).

At the suppression hearing, when Officer Williams was asked about the incident in question, he plainly consulted notes regarding some of the specifics with no objection from Appellant. *See*, *e.g.*, N.T. Suppression, 3/12/12, at 9 ("I observed a black Volkswagen Jetta -- if I can refer to my notes -- . . . Pennsylvania tag of GKZ-8988, parked on the 5600 block of Chester Avenue facing northbound."). Appellant did not object to the officer's use of the notes or ask to inspect them at that time (the only time the transcript reflects that Officer Williams consulted his notes) or at any point during the twenty pages of the officer's direct examination. Nor did Appellant express any interest in the plainly-unconcealed notes during the first twenty pages of his cross-examination of Officer Williams, during which he questioned the officer extensively about discrepancies between his testimony that day and the 75-49 investigation report he authored on September 3, 2011. After the officer indicated that he did not review the 75-49 report before testifying, Appellant asked what paperwork he had reviewed, and he indicated "The 48 A." *Id*. at 44. Counsel stated that he had never seen the document, and asked for it to be turned over immediately. *Id*. There was then disagreement about whether the officer had reviewed a form 48 A, and whether the document was included within mandatory discovery, and the Commonwealth represented that

Appellant had copies of all paperwork that the Commonwealth had.[2] *Id*. at 45-46.

Appellant's counsel then referred to the piece of paper Officer Williams had with him on the stand and asked for the court to mark it as an exhibit, stating "anything the officer writes down, we are entitled to." *Id*. at 47. The Commonwealth objected, as it was not an official document, but rather was a page of notes the officer took as he read the discovery materials so he "wouldn't have to keep asking what happened." *Id*. at 48. Appellant posited that he could use the document for impeachment, and the Commonwealth noted there was no inconsistent statement on which to impeach Officer Williams. *Id*. at 48-49. Appellant observed that he could not determine whether there were inconsistent statements until he was permitted to see what statements were contained in the document. *Id*. at 49. The suppression court ruled that the notes were not admissible as an exhibit, and granted Appellant's request that the officer not be allowed to use them. *Id*.

Although Appellant did not expressly cite Rule 612, his objection and request sought to invoke its provisions regarding inspection of the document and its inclusion in the record. Therefore, we do not find that Appellant waived his claim that the suppression court erred in refusing his request to examine the notes upon which Officer Williams relied in testifying. Further, we conclude

---

[2] We have found no form 48 A in the certified record.

that the suppression court did err in so refusing, and in declining to mark the notes as an exhibit and include them in the record for purposes of appellate review.

Nonetheless, we agree with the Commonwealth that the error was harmless. "[T]he doctrine of harmless error is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." *Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) (internal quotation marks omitted). Harmless error exists when the Commonwealth shows, *inter alia*, that the error did not prejudice, or caused only *de minimis* prejudice to, the defendant; or that the error could not have contributed to the outcome based on the properly-admitted evidence. *Commonwealth v. Green*, 162 A.3d 509, 519 (Pa.Super. 2017) (*en banc*).

The resolution of Appellant's suppression motion hinged upon the two issues of whether the stop of the Jetta was supported by probable cause in that the taillights were inoperable, and, if so, whether the contraband recovered from the vehicle without a warrant was in plain view once the car was lawfully stopped. N.T. Suppression, 3/12/12, at 86-87. Appellant's position was that, because no citation was issued for the inoperable taillights, because Officer Williams was initially on the scene seeking to find drug-related activity, and because Officer Williams knew Appellant had a history as a drug dealer, Officer Williams lied when he testified that the brake lights were not

functioning, and the stop was made purely to investigate whether Appellant had drugs on him. *Id*. at 87-90.

However, as the Commonwealth noted both at the suppression hearing and in its brief before this Court, the inoperability of the taillights serving as probable cause to make the stop was confirmed by Officer Moore, an officer in the marked vehicle that initiated the stop, who explained that he exercised his discretion to not issue a citation to the driver of the Jetta because the driver offered a reasonable explanation. *Id*. at 81-82. Further, Officer Williams's testimony concerning both the taillights and the plain-view observance of the suspected cocaine and paraphernalia was largely corroborated by the 75-49 investigation report that he authored shortly after the arrest. *Id*. at 94-95.

There were some inconsistencies between Officer Willaims's testimony and the investigation report, most of which concerned the precise street locations of Appellant and Officer Williams at various times during the incident. Appellant utilized these discrepancies, as well as the fact that no citation was issued for the vehicle code violation that was the premise of the stop, to attack the credibility of Officer Williams's testimony at the hearing. *Id*. at 31-34, 41-44, 49-52. Still the suppression court made the factual findings that the stop was supported by the probable cause established by non-operating brake lights, and that the drugs were in Officer Williams's plain view when he approached the passenger side of the vehicle after the lawful stop. *Id*. at

shaken by his failure to recount details in a manner fully consistent with a document prepared close in time to the events at issue, we fail to see how his testimony proffered upon examination of, and presumably consistent with, notes that he had taken for the purpose of testifying would have made any difference.

As such, and in light of the totality of the evidence before the suppression court, we conclude that the court's error in refusing to allow Appellant to view the notes Officer Williams made after reviewing paperwork that Appellant was provided, and its failure to make the notes part of the record, would not have changed the outcome of the suppression hearing. ***Accord Commonwealth v. Counterman***, 719 A.2d 284, 296 (Pa. 1998) (holding failure to allow defendant to review juvenile records of witnesses to establish bias was harmless error where testimony was corroborated by other witnesses). Accordingly, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/14/18