**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Robert WALKER, Appellant.**

Superior Court of Pennsylvania.

Argued March 12, 2008.

Filed Aug. 7, 2008.

---

David A. Regoli, New Kensington, for appellant.

Judith P. Petrush, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, ORIE MELVIN, LALLY–GREEN, KLEIN, BENDER, BOWES, GANTMAN, and SHOGAN, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Robert Walker, appeals from the order entered on June 27, 2006, in the Court of Common Pleas of Westmoreland County that denied his omnibus pre-trial motion to dismiss on the grounds of double jeopardy.[1] Upon review, we affirm.

---

1. At the outset, we observe that the denial of a pre-trial motion seeking discharge on double jeopardy grounds is final and may be appealed immediately. *See Commonwealth v. But-*

¶ 2 In the criminal information filed on October 4, 2004, Appellant, who was twenty-eight years old at the time, was charged with aggravated indecent assault where the victim is less than thirteen years of age (18 Pa.C.S.A. § 3125(a)(7)), indecent assault where the victim is less than thirteen years of age (18 Pa.C.S.A. § 3126(a)(7)), and corruption of minors (18 Pa.C.S.A. § 6301(a)(1)).[2] These charges resulted from an incident that was alleged to have occurred in Appellant's swimming pool on June 29, 2004, involving I.B., a ten-year-old female.[3]

¶ 3 When questioned by treating medical personnel after the incident, I.B. stated, albeit in a child's verbiage, that Appellant digitally penetrated her vagina, that he penetrated her anus with his penis, and that he forced I.B. to touch his penis while the two were in Appellant's swimming pool. I.B. also alleged that Appellant attempted to kiss her on the mouth after they exited the swimming pool and that he touched her chest.

¶ 4 However, at trial, I.B. testified that Appellant touched her vagina and anus but that the touching was done over her bathing suit. Upon the conclusion of I.B.'s direct testimony, the trial judge called both counsel to sidebar and stated that I.B. did not testify that penetration occurred during the incident.[4] After cross-examination, the trial judge stated his concern that the Commonwealth would attempt to prove its case through hearsay. N.T. Trial, 2/7/06–2/8/06, at 81.

¶ 5 Following his statement of concern, the trial judge conducted a discussion with counsel regarding the introduction of I.B.'s statements to treating medical personnel about penetration through their testimony. *Id.* at 81–84. The trial judge ordered the parties to research the issue and called a lunch recess for the jury. *Id.* at 85–90. Prior to the jury's return, the trial judge heard argument *in camera* concerning the issue of the admissibility of I.B.'s statements about penetration to treating medical personnel. Appellant's counsel argued that the statements were inadmissible hearsay because, in his view, the majority of the statements that I.B. made to medical personnel were not made for purposes of medical diagnosis and treatment. In response, the Commonwealth asserted that these statements were for the purpose of medical treatment and should be admitted as substantive evidence. *See* Pa.R.E. 803(4).[5] At the conclusion of argument,

*ler*, 380 Pa.Super. 595, 552 A.2d 702, 703 n. 2 (1988) (citation omitted); *see also Commonwealth v. Bolden*, 472 Pa. 602, 633, 373 A.2d 90, 105 (1977) (Pursuant to the "exceptional circumstances" exception to the final judgment rule, "... denial of a pretrial application to dismiss an indictment on the ground that the scheduled trial will violate the defendant's right not to be placed twice in jeopardy may be appealed before the new trial is held.").

2. The record reflects that the criminal information in this matter was amended on January 23, 2006, to add a charge of aggravated indecent assault of a child (18 Pa.C.S.A. § 3125(b)), a felony of the first degree.

3. The alleged victim's full name appears in the certified record; however, we will refer to her by the initials, I.B., for purposes of our discussion. *See Commonwealth v. Bryson*, 860 A.2d 1101, 1103 n. 1 (Pa.Super.2004) (changing child's full name to initials in proceeding involving juvenile).

4. To prove the crime of aggravated indecent assault occurred, the Commonwealth must first prove that the defendant penetrated, however slightly, the genitals or anus of the victim with a part of the defendant's body for any purpose other than good faith medical, hygienic, or law enforcement procedures. *See* 18 Pa.C.S.A. § 3125(a).

5. Pa.R.E. 803(4) provides as follows:

**Statements for purposes of medical diagnosis or treatment.** A statement made for

the trial judge permitted the Commonwealth to question the treating medical personnel about I.B.'s statements regarding penetration. N.T. Trial, 2/7/06–2/8/06, at 127–183.

¶ 6 After the jury returned to the courtroom, the Commonwealth conducted its examination of I.B.'s mother, who testified that I.B. told her that Appellant "... touched her in her vagina and tried to kiss her, and that's when I dialed 911." *Id.* at 143. Thereafter, the Commonwealth conducted its examination of several treating medical personnel, who testified that I.B. told them that Appellant did, in fact, penetrate her vagina and anus.

¶ 7 The trial continued the next day, whereupon Appellant objected to the testimony of the medical personnel asserting that, regardless of Pa.R.E. 803(4), the effect of the medical personnel's testimony, including the testimony offered the previous day, was to impeach I.B. through the extrinsic evidence of her prior inconsistent statements about vaginal and anal penetration. Consequently, Appellant contended that the Commonwealth was obligated to follow the procedure set forth in Pa.R.E. 613(b) (concerning impeachment of a witness through extrinsic evidence of an inconsistent statement) to introduce the medical personnel's testimony with respect to I.B.'s statements regarding penetration.[6]

¶ 8 After lengthy argument, the trial judge agreed with Appellant's assertion and concluded that the foundational requirements of Pa.R.E. 613(b) had to be satisfied before any of I.B.'s statements to medical personnel could be treated as substantive evidence. Likewise, the trial judge also found that, despite I.B.'s testimony that she did not remember speaking to medical personnel, there was an inadequate foundation for admission of those statements pursuant to Pa.R.E. 613(b).

¶ 9 Thereafter, the Commonwealth requested that the trial judge permit the Commonwealth to recall I.B. to lay the foundation required for admission of the statements in conformity with the trial judge's ruling. N.T. Trial, 2/7/06–2/8/06, at 261. Appellant objected to I.B. being recalled and suggested that, although the Commonwealth had not yet rested, the trial judge should quash or sever the aggravated indecent assault charges. *Id.* at 284–285. The trial judge denied both the Commonwealth's and Appellant's requests and declared a mistrial *sua sponte*, stating the following:

> There is going to be a mistrial granted by the Court, imposed by the Court out of a need to simply separate this case from this jury because of the utter impossibility of this Court explaining things and instructing this jury adequately so that they can fairly deliberate to a verdict in the case. There's way too

purposes of medical treatment, or medical diagnosis in contemplation of treatment, and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment.

6. Pa.R.E. 613(b) provides, in relevant part, as follows:

   **(b) Extrinsic evidence of prior inconsistent statement of witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if, during the examination of the witness,

   (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;

   (2) the witness is given an opportunity to explain or deny the making of the statement; and

   (3) the opposing party is given an opportunity to question the witness.

much that has been testified that—that I can't instruct them to ignore at this point in time. So, that's where we are.

I'm going to grant—not grant the mistrial, because nobody's really making the motion for the mistrial. I'm going to say this case is a mistrial, okay, so that the onus is on me in that circumstance.

[The Commonwealth], I think, stated it correctly to a point. The bottom line is that I'm the person who's supposed to know the law, whether you argued all of what was available or not, you finally came in this morning and argued something that convinced [me] that I had made an erroneous ruling yesterday, but by that time, we'd heard way too much. It's my responsibility at this point in time to either be able to clear that up with the jury, to instruct the jury adequately as to how they can disregard all of that, or to simply admit the failure of or the inability of the Court to be able to do that and declare the mistrial, and that's what I'm going to do, I'm declaring a mistrial.

[The Commonwealth] hasn't rested her case at the point at which I make this determination, so I can't make a ruling. There's no procedural means by which I can make a ruling about those charges, so they-they go back to the drawing board[;] you go back to the drawing board. It's what I meant to avoid if we could today for both the Commonwealth's victim and your defendant, but if you guys can't seem to get to that point, then you can't get to that point.

\* \* \*

You have to deal with the realities of the situation, but, no, we can't just continue to attenuate the process. I [have] a jury in there, I've got to let them go. It's that simple[.]

\* \* \*

I'm going to direct that the case be—I'm declaring a mistrial under [Pa. R.Crim.P.] 605(B), and I'm declaring that there's manifest necessity under the case law for me to declare a mistrial under the 806—of 605(B) of the Rules of Criminal Procedure.

I simply cannot in any way—you know, I'm trying to think this through back here. I just can't go back and unring all the bells that have been rung at this point in time with this jury, at this point in time, as far as instructions, it's just impossible.

N.T. Trial, 2/8/06, at 285–288.

¶ 10 After the declaration of a mistrial, the trial court ordered the court administrator to place the case on the docket for a new trial. Appellant subsequently filed an omnibus pre-trial motion to dismiss pursuant to his federal and state constitutional rights against double jeopardy. The trial court denied Appellant's motion to dismiss.

¶ 11 Appellant filed a timely notice of appeal to this Court from the trial court's denial of his motion to dismiss on double jeopardy grounds. The trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925(b) within 14 days of the date of its order, and Appellant complied. Thereafter, the trial court authored an opinion that addressed the issue presented in Appellant's concise statement.

¶ 12 Appellant presents the following issue for our review:

WHETHER THE TRIAL COURT'S SUA SPONTE DECLARATION OF A MISTRIAL, CITING A MANIFEST NECESSITY AS THE REASON WAS A VIOLATION OF [APPELLANT'S] CONSTITUTIONAL DOUBLE JEOPARDY RIGHTS AND SHOULD A RE-

TRIAL BY THE COMMONWEALTH BE BARRED?

Appellant's Brief at vi.

¶ 13 Our review regarding appeals from the denial of a motion to dismiss on double jeopardy grounds following declaration of a mistrial *sua sponte* was summarized by a panel of this Court in *Commonwealth v. Kelly*, 797 A.2d 925 (Pa.Super.2002):

> It is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision. *Commonwealth v. Leister*, 712 A.2d 332, 334 (Pa.Super.1998) (citing *Commonwealth v. Gains*, [383 Pa.Super. 208, 556 A.2d 870] (Pa.Super.1989)); Pa.R.Crim.P. 1118(b) (amended and renumbered as Rule 605, effective April 1, 2001). Where there exists manifest necessity for a trial judge to declare a mistrial *sua sponte*, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial. *Leister*, 712 A.2d at 335 (citing *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4[(1976))].

In *Commonwealth v. Diehl*, 532 Pa. 214, [216–17], 615 A.2d 690[, 691 (1992)], our Supreme Court, when considering whether manifest necessity for the trial court's *sua sponte* declaration of a mistrial existed, stated:

> Since Justice Story's 1824 opinion in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165, it has been well settled that the question whether under the Double Jeopardy Clause there can be a new trial after a mistrial has been declared without the defendant's request or consent depends on [whether] there is a manifest necessity for the mistrial, or the ends of public justice would otherwise be defeated. *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976), citing *United States v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). It is important to note that in determining whether the circumstances surrounding the declaration of a mistrial constitute manifest necessity, we apply the standards established by both Pennsylvania and federal decisions. *Commonwealth v. Mitchell*, 488 Pa. 75, 410 A.2d 1232 (1980).

Pennsylvania Rule of Criminal Procedure [605(B)] provides that:

> When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity.

In accordance with the scope of our review, we must take into consideration all the circumstances when passing upon the propriety of a declaration of mistrial by the trial court. The determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his fate determined by the jury first impaneled. *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616, 619 (1974), citing *United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant inter-

est in whether or not to take the case from the jury. *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976). Finally, it is well established that any doubt relative to the existence of manifest necessity should be resolved in favor of the defendant. *Bartolomucci,* 468 Pa. at 347, 362 A.2d 234.

We do not apply a mechanical formula in determining whether a trial court had a manifest need to declare a mistrial. "Rather, 'varying and often unique situations arise during the course of a criminal trial ... [and] the broad discretion reserved to the trial judge in such circumstances has been consistently reiterated....'" *Leister,* 712 A.2d at 335 (quoting *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973)); *Commonwealth v. Morris,* 2001 PA Super 112, 773 A.2d 192 (Pa.Super.2001).

*Kelly,* 797 A.2d at 936–937.[7]

¶ 14 We begin our discussion with the observation that we will not review the soundness of the trial court's evidentiary rulings because they are not truly at issue in this case. This Court is an error-correcting court; it is not an error-finding court. *See Commonwealth v. Wood,* 833 A.2d 740, 748 (Pa.Super.2003) (citation omitted), *affirmed,* 580 Pa. 561, 862 A.2d 589 (2004). Accordingly, we will follow the logic of the trial court's evidentiary rulings in our determination of whether manifest necessity existed for the trial court to declare a mistrial *sua sponte.*

¶ 15 As indicated above, the trial court reversed its previous ruling regarding the testimony of the treating medical personnel regarding I.B.'s statements to them about penetration. The court concluded that the Commonwealth should have followed the procedures set forth at Pa.R.E. 613(b) to impeach I.B.'s testimony.

¶ 16 Prior to the trial court reversing its earlier ruling, both the Commonwealth and Appellant questioned I.B. as to whether she recalled what she said to treating medical personnel, and she stated that she did not remember what she had said. Thereafter, as indicated above, the trial court permitted several treating medical personnel to testify about the statements I.B. made to them regarding penetration, prior to reversing its decision regarding the admissibility of the statements. It was only after the jury repeatedly heard the witnesses testify as to I.B.'s recounting of anal and vaginal penetration that the trial court determined that a mistrial was necessary.

¶ 17 As noted, the determination by a trial court to declare a mistrial after jeopardy has attached is not one to be lightly undertaken, since the defendant has a substantial interest in having his or her fate determined by the jury first impaneled. *Kelly,* 797 A.2d at 925 (citing *Commonwealth v. Stewart,* 456 Pa. 447, 452, 317 A.2d 616, 619 (1974)). Additionally, failure to consider if there are less drastic alternatives to a mistrial creates doubt about the propriety of the exercise of the trial judge's discretion and is grounds for barring retrial because it indicates that the court failed to properly consider the defendant's significant interest in whether or not to take the case from the jury. *Id.* (quoting *Commonwealth ex rel. Walton v. Aytch,* 466 Pa. 172, 352 A.2d 4 (1976)). However, there can be no rigid rule for finding manifest necessity since each case is individual. *Commonwealth v. Rivera,*

---

7. Parenthetically, we note that, as the jury had been empanelled and sworn, jeopardy attached in this case. *See Commonwealth v.* *Sullens,* 533 Pa. 99, 104, 619 A.2d 1349, 1352 (1992).

715 A.2d 1136, 1138 (Pa.Super.1998). Moreover, as a general rule, the trial court is in the best position to gauge potential bias and deference is due the trial court when the grounds for the mistrial relate to jury prejudice. *Arizona v. Washington,* 434 U.S. 497, 513–514, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). From his or her vantage point, the trial judge is the best arbiter of prejudice, because he or she has had the opportunity to observe the jurors, the witnesses, and the attorneys and evaluate the scope of the prejudice. *Id.*

¶ 18 Here, the trial court duly considered the unique facts and procedural posture of the case, determined that there was no way to "unring the bells" with respect to what the jury had heard, stated that curative instructions were impossible due to the amount of testimony already admitted, and found that there was no alternative but to declare a mistrial. N.T. Trial, 2/8/06, at 285–288. Moreover, in the trial court opinion, the court explained:

> In this case, this Court engaged in a lengthy discussion with both counsel for the defense and the prosecutor with respect to the erroneous allowance of testimony, and the failure to follow the Pennsylvania Rules of Evidence during the crucial examination of the victim-witness. This Court made a determination that it could not remove the evidence from the consideration of the jurors simply by instructing them after the fact. This Court recognized that understanding the applicable law had been difficult for both counsel and the Court, and that to expect the jurors to find it any less difficult to understand would be ludicrous. Accordingly, this Court decided that the only way to be fair to [Appellant], and assure that the dictates of the Rules of Evidence were followed, would be to declare a mistrial and start again. Under these circumstances, we find that manifest necessity required that a mis-

trial be declared, and that double jeopardy principles do not attach to prohibit a new trial.

Trial Court Opinion, 9/6/06, at 3–4. We agree with the trial court's conclusion.

¶ 19 While we are cognizant that doubts relative to the existence of manifest necessity should be resolved in favor of the defendant, we reiterate that the decision to declare a mistrial *sua sponte* is left to the sound discretion of the trial court, and that decision will not be disturbed on appeal absent an abuse of that discretion. *Kelly,* 797 A.2d at 936. Utilizing this standard of review and upon consideration of the aforementioned facts and procedural posture of this case, we conclude there was no abuse of discretion in the trial court's decision. Because we conclude that the trial judge declared a mistrial due to manifest necessity, we further conclude that it correctly denied Appellant's motion to dismiss on double jeopardy grounds. *See id.* (when the trial court declares a mistrial *sua sponte* due to manifest necessity, neither the Fifth Amendment to the United States Constitution, nor Article I, § 10 of the Pennsylvania Constitution will bar retrial). Consequently, we affirm the order entered on June 27, 2006.

¶ 20 Order affirmed.

¶ 21 KLEIN, J., files a Dissenting Opinion in which BOWES, J., joins and BENDER, J., Concurs in the Result and files a separate Dissenting Opinion.

¶ 22 BENDER, J., files a Dissenting Opinion in which BOWES, J., joins and KLEIN, J., Concurs in the Result and files a separate Dissenting Opinion.

DISSENTING OPINION BY KLEIN, J:

¶ 1 In this case, the trial judge granted a mistrial over the objection of defense coun-

sel, and declared a "manifest necessity" despite the desire of defense counsel to continue to verdict with the jury selected. Unfortunately, I do not believe the record demonstrates there *was* "manifest necessity" despite the trial judge's belief that there was. There were a number of options short of a mistrial that would have allowed the defendant to continue the trial to verdict without prejudice. Therefore, since I believe the trial judge erred and abused his discretion when he concluded that manifest necessity required a new trial, I am compelled to find that double jeopardy requires dismissal of the action, and accordingly dissent.

¶ 2 Particularly noteworthy is the fact that the *major* charges—which required a finding of penetration—would likely have been dismissed in any event once the judge found that there was no exception to the hearsay rule and the statements to the medical personnel could not come in as substantive evidence. Once those charges were no longer under consideration, there would be no prejudice for the jury to analyze the rest of the testimony in the case.

¶ 3 Manifest necessity is a nebulous concept and there is no hard and fast method of determining when manifest necessity arises. Nonetheless, it is a high standard when we take into account the "substantial interest" a defendant has "in having his fate determined by the first jury impaneled." *See Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616, 619 (1974), *quoting United States v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). I further note that partner to manifest necessity in granting a mistrial is where "the ends of public justice would otherwise be defeated." *Commonwealth v. Diehl*, 532 Pa. 214, 615 A.2d 690, 691 (1992). *Diehl* also informs us that "any doubt about the manifest necessity of declaring a mistrial must be resolved in the defendant's favor." *Id.*

Finally, while manifest necessity does not automatically require the trial court consider a mistrial as a last resort, it does require the trial court "consider less drastic options before declaring a mistrial." *Commonwealth v. Leister*, 712 A.2d 332, 336 (Pa.Super.1998), *quoting Arizona v. Washington*, 434 U.S. 497, 511, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978).

¶ 4 Particularly in this case, where the prejudice by allowing the hearsay testimony of penetration would be irrelevant because there was not enough evidence for those charges to survive a motion for compulsory non-suit, a cautionary instruction would have been sufficient.

¶ 5 There are numerous occasions where errors far more significant than this one have not required the drastic remedy of a mistrial.

¶ 6 In *Commonwealth v. Nahavandian*, 849 A.2d 1221 (Pa.Super.2004), the notes of testimony from the preliminary hearing, which had never been introduced into evidence, were sent to the jury room during deliberations. The jurors admittedly read those notes of testimony. A cautionary instruction was sufficient to correct any prejudice. In *Commonwealth v. Guilford*, 861 A.2d 365 (Pa.Super.2004), a police officer testified the defendant was a suspect in prior robberies. A cautionary instruction was deemed sufficient to correct the error. In *Commonwealth v. Hoffman*, 301 Pa.Super. 312, 447 A.2d 983 (1982), on cross-examination, the defendant, a former police officer, was asked about his dismissal from the police force. A cautionary instruction was given. In addition to that question, the Commonwealth also repeatedly asked the defendant about intentionally inspiring fear in local teens as well as commenting, "You've told us that you had ... physical contact with your students. Is there a cemetery somewhere full of your karate students?" *Id.* at 985.

In each of these instances a mistrial was denied and no cautionary instruction given. In *Commonwealth v. Canady*, 500 Pa. 624, 459 A.2d 715 (1982), reference was made about the defendant having been confined to a mental institution for being a sexual offender. The case makes no reference to any cautionary instruction and a mistrial was denied. In *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985), a first degree murder, death penalty case, the Commonwealth made improper reference to the defendant's prior incarceration and alleged that the defendant homosexually raped the victim, a 13 year old boy, even though Pursell had not been charged with that crime. A cautionary instruction was given. Finally, I note that there are innumerable cases where the Commonwealth has improperly, and in violation of the Constitution, referred to the defendant's right to remain silent, yet no mistrial was declared and the constitutional error was deemed correctable through instruction.[8]

¶ 7 If the *Commonwealth* can survive a mistrial with cautionary instructions in cases like this, that means that there are remedies far short of a mistrial that could operate in this case. There should not be a different standard depending on whether it is the *defendant* who claims that a mistrial is not necessary than it is when the *Commonwealth* claims that a mistrial is not necessary.

¶ 8 I recognize that the rule that prevents retrial when a judge errs in *sua sponte* declaring manifest necessity to grant a mistrial punishes the Commonwealth. That is particularly upsetting because in this case, the Commonwealth strongly opposed a mistrial. Also, it is the public as well that is deprived of having a determination of guilt or innocence made in a case where there are serious charges.

¶ 9 As the Pennsylvania Supreme Court said in *Commonwealth v. Burke*, 566 Pa. 402, 781 A.2d 1136, 1144 (2001), quoting from *Commonwealth v. Shaffer*, 551 Pa. 622, 712 A.2d 749, 752 (1998):

> Dismissal of criminal charges punishes not only the prosecutor ... but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Thus, the sanction of dismissal of criminal charges should be utilized only in the most blatant cases. Given the public policy goal of protecting the public from criminal conduct, a trial court should consider dismissal of charges where the actions of the Commonwealth are egregious and where demonstrable prejudice will be suffered by the defendant if the charges are not dismissed.

¶ 10 However, it is our obligation to interpret existing law, like it or not, not to make the law. I believe that we are bound by precedent and have no choice but to rule that there was no manifest necessity to grant a mistrial and therefore a retrial is prohibited. Accordingly, I must dissent.

¶ 11 BOWES, J., joins this Dissenting Opinion and also joins the Dissenting Opinion filed by BENDER, J. BENDER, J., Concurs in the Result of this Dissenting Opinion and files a separate Dissenting Opinion.

## DISSENTING OPINION BY BENDER, J.:

¶ 1 I respectfully dissent.

¶ 2 "It is absolutely crucial to remember that when reviewing the grant of a mistrial *sua sponte*, 'we resolve any doubt' in favor of the liberty of the citizen, rather than

---

**8.** Two such cases are: *Commonwealth v. Boone*, 862 A.2d 639 (Pa.Super.2004); *Com-* *monwealth v. Bracey*, 831 A.2d 678 (Pa.Super.2003).

exercise [of] what could be an unlimited, uncertain, and arbitrary judicial discretion." *Commonwealth v. Kelly,* 797 A.2d 925, 942 (Pa.Super.2002) (citation omitted).

¶ 3 By affirming the judgment in this case, the Majority vitiates the defendant's protection against double jeopardy and gives the prosecution another chance to convict where the victim's own testimony undermines the Commonwealth's claims. Such a course is, at best, an empty gesture unsupported by a sufficient justification for the trial court's decision, *sua sponte,* to end the first trial in a mistrial. In point of fact, the prosecution's failure to lay the appropriate foundation for testimony seeking to impeach the victim's recollection with prior inconsistent statements, could have been excused by the trial court in the "interests of justice" pursuant to Pa.R.E. 613(b)[9]. Although I recognize the trial court's good faith in striving to achieve the evidentiary benchmark set by the Rule, the discretion the Rule itself affords the court eliminates the need for strict application whenever the just resolution of the case renders untenable adherence to the fine points of procedure counseled by subsections (1), (2), and (3). Because the trial court failed to apply that more measured remedy as an alternative to a mistrial, I find no convincing demonstration of the "manifest necessity" on which a trial court's exercise of discretion must be based. *See Kelly,* 797 A.2d at 936–37 (reaffirming that trial judge may declare mistrial *sua sponte* only on the basis of manifest necessity).

¶ 4 Moreover, the record at the previous trial demonstrates that the safeguards imposed by Rule 613 *were* observed even if technical compliance with the Rule was not achieved. Both the prosecution and the defense questioned the victim as to whether she remembered what she said to treating medical personnel, *see* Pa.R.E. 613(b)(1), (2), and the victim, in turn, stated that she *did not remember what she said.* Thereafter, the trial court ruled that the victim's prior inconsistent statements were admissible and permitted several treating medical personnel to testify about the statements the victim made to them regarding penetration. Presumably, they testified precisely as they would at a new trial, albeit without the benefit of the court's later invocation of Rule 613(b), which set in motion a well-intended but ill-advised impetus toward mistrial.

¶ 5 Significantly, the *Commonwealth* responded to the trial court that the fact of the victim's age and the fact that she testified on both direct examination and cross-examination that she could not recall her statements each *weighed in favor of a relaxation of the rule* to further the inter-

---

9. Pennsylvania Rule of Evidence 613 provides, in pertinent part, as follows:

   **Rule 613. Prior statements of witnesses**
   **(a) Examining witness concerning prior inconsistent statement.** A witness may be examined concerning a prior *inconsistent* statement made by the witness, whether written or not, and the statement need not be shown or its contents disclosed to the witness at that time, but on request the statement or contents shall be shown or disclosed to opposing counsel.
   **(b) Extrinsic evidence of prior inconsistent statement of witness.** Unless the interests of justice otherwise require, extrinsic evidence of a prior inconsistent statement by a witness is admissible only if, during the examination of the witness,
   (1) the statement, if written, is shown to, or if not written, its contents are disclosed to, the witness;
   (2) the witness is given an opportunity to explain or deny the making of the statement; and
   (3) the opposing party is given an opportunity to question the witness.
   This section does not apply to admissions of a party-opponent as defined in Rule 803(25) (relating to admissions by a party-opponent).

ests of justice. *See* N.T. Trial, 2/8/2006, at 257. I concur in that assessment. Given that both the prosecution and the defense had the opportunity to examine the victim regarding her conversations with the treating medical personnel, and, given that several treating medical personnel had *already testified* on this subject, the "interests of justice" weighed in favor of the trial judge relaxing the Commonwealth's strict compliance with the Rule's requirements. This is especially true, since neither Appellant nor the Commonwealth sought a mistrial at that stage of the proceedings. In my view, these circumstances eliminate any possibility that manifest necessity might have existed to sustain the court's grant of a mistrial.

¶ 6 Because I conclude that the trial court's declaration of a mistrial is not supported by "manifest necessity," I would also conclude that the court abused its discretion subsequently when it denied the defendant's motion to dismiss the current prosecution on double jeopardy grounds. *See Kelly,* 797 A.2d at 942. I recognize that such a ruling would eliminate the possibility that the most serious charges in the information will ever be resolved in court. Likewise, I am well aware of the complexity of the issues presented in this case, and the learned trial judge's attempts to resolve those issues properly and impartially. Nevertheless, I cannot countenance the Majority's compromise of the defendant's constitutional rights, first to have his trial completed expeditiously, and second to avoid being "twice put in jeopardy of life or limb." U.S. CONST. amend. V; PA. CONST. art. I, § 10. *See also* 18 Pa.C.S. § 109(1). These rights are paramount and may never be subordinated to rigid adherence to a Rule of Evidence, especially where the record reveals that the Rule's requirement was satisfied in substance, and the Rule itself permits its relaxation in the interests of justice, *see*

Pa.R.E. 613(b). Given these realities, I can find little common ground with the Majority; in point of fact, its disposition serves only to create a risk of—or potential for—conviction, which, even if the product of a perfect trial, will stand in plain violation of double jeopardy and, not coincidentally, the "interests of justice." *See id.*

¶ 7 In my view, the trial court's order should be reversed and the defendant discharged. As the Majority declines this course, I must respectfully dissent.

¶ 8 BOWES, J., joins this Dissenting Opinion and also joins the Dissenting Opinion filed by KLEIN, J. KLEIN, J., Concurs in the Result of this Dissenting Opinion and files a separate Dissenting Opinion.