J-S08002-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| REGGIE J. FIELDS | : | |
| | : | |
| Appellant | : | No. 302 EDA 2024 |

Appeal from the Judgment of Sentence Entered March 4, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004745-2017

BEFORE: DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY DUBOW, J.: **FILED APRIL 14, 2025**

Appellant, Reggie J. Fields, appeals from the March 4, 2019 judgment of sentence of 20 to 40 years of incarceration followed by 7 years of probation entered in the Philadelphia County Court of Common Pleas following his jury conviction of Involuntary Deviate Sexual Intercourse-Forcible Compulsion, Conspiracy, Promoting Prostitution of a Minor, Trafficking in Minors, Involuntary Servitude, Sexual Exploitation of Children, and two counts of Unlawful Contact with a Minor.[1] Appellant challenges the trial court's denial of his motion for a mistrial. After careful review, we affirm.

We glean the relevant factual history from the trial court opinion and the certified record. On April 23, 2017, Victim, who was 14 years old, left

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3123(a)(1), 903(a), 5902(b.1)(1), 3011(b), 3012(a), 6320(a), and 6318(a)(1), respectively.

home following an argument with her mother. Victim went to co-defendant Shaikey Copper's house, where she had sexual intercourse with him. Mr. Copper then called an Uber to take Victim to Fantasia Gale's house and told Victim that she would be dancing with Ms. Gale. When Victim arrived at Ms. Gale's house, she told Ms. Gale that she was 14 years old, which "seemed to shock Ms. Gale." Trial Ct. Op., 7/31/24, at 3. Ms. Gale explained that they would not be dancing, but instead would be having "in-calls" and "out-calls," meaning that she would be having sex for money, even though Victim told Ms. Gale she did not want to do so. N.T. Trial, 9/28/18, at 35.

Later, Appellant, Ms. Gale's boyfriend, came to the house. Ms. Gale instructed Victim to perform oral sex on Appellant. Victim left the room, but Appellant followed her and told her to perform oral sex on him. Although Victim initially told him no, she felt she had no other choice and performed oral sex on Appellant. Victim then slept on Ms. Gale's couch that night while Appellant remained in the house.

The following day, Ms. Gale and Victim each took an in-call at the house. Ms. Gale told Victim to give the money she received to Ms. Gale. Victim was then forced to have sexual intercourse with another man, known as Shizz. Later that day, Victim, Appellant, Ms. Gale, and Shizz went to Appellant's mother's house where Shizz twice more forced Victim to have sexual intercourse with him.

Later, while in Appellant's car, Victim encountered co-defendant Angelo Romero. Appellant and Ms. Gale ordered Victim to go into Mr. Romero's car

- 2 -

with Shizz and another man. Victim was forced to perform oral sex on Mr. Romero while Shizz attempted to rape her. Appellant also organized several out-calls for Victim, and Victim gave the money she received to either Appellant or to whomever drove her to the call.

For two days following her departure from her mother's house, Victim had nothing to eat or drink except for a glass of orange juice. At one point, Appellant and Shizz "taunted [Victim] by pouring cereal into a dog bowl on the floor and chanting names at her." Trial Ct. Op. at 4.

On April 25, 2017, Victim left Appellant's mother's house to go to a corner store. After unsuccessfully using the store's phone to call relatives for help, someone gave her a bus token and she went to Temple Hospital. At 4:30 P.M., Officer Michael Poekert responded to Temple Hospital and moved Victim to St. Christopher's Hospital for a rape kit, full physical examination, and interview.

The following day, police arrested Appellant and charged him with, *inter alia*, the above charges. On September 27, 2018, Appellant proceeded to a jury trial with co-defendants Copper and Romero. Several witnesses testified for the Commonwealth, including Victim and Officer Poekert, who testified consistent with the above facts, and Jennifer Black-Waerig, who testified regarding Victim's physical examination at St. Christopher's Hospital.

Officer Ashley Capaldi of the Special Victims Unit also testified. The following exchange occurred during her cross-examination:

[APPELLANT'S] COUNSEL: You also said [Victim] told you that someone had forced her to eat cereal from a bowl like a dog and filmed it and recorded it on [Appellant's] phone, correct?

OFFICER CAPALDI: Correct.

COUNSEL: And do you have a copy of that video?

OFFICER CAPALDI: No, that video, based on what your client told me in confession, that was taken on Snapchat. As you know, Snapchat is good for about 10 seconds.

COUNSEL: You're saying that my client told you he has a video recording of her eating from a bowl like a dog?

OFFICER CAPALDI: In his statement at SCI, a commander video where he waive [*sic*] his Constructional [*sic*] rights [. . . .]

COUNSEL: I would object.

THE COURT: Sustained. We'll ask the jurors to step out please.

N.T. Trial, 9/27/18, at 97-98. After the jury exited the courtroom, Appellant's counsel explained that he objected because Officer Capaldi "basically testif[ied] that [Appellant] made a confession to these crimes which absolutely never happened." *Id.* at 98-99. The Assistant District Attorney explained that Officer Capaldi had taken a statement from Appellant, but that she had told Officer Capaldi that the Commonwealth would not use the statement.

The court asked defense counsel what remedy he sought, and he stated

I feel like I'm in a position I have to ask for a mistrial. I don't want that, but just basically to preserve that issue. But what I would like is that the jury receive some sort of instruction basically stating that the officer on the stand deliberately misstated that my client's statement was a confession.

*Id.* at 102-103. The court denied the motion for a mistrial, but it gave the following cautionary instruction to the jurors upon re-entering the courtroom:

> Jurors, I have an instruction for you. It was inappropriate and inaccurate for the officer to refer to [Appellant's] statement as a confession. There was no confession. The officer's testimony is incorrect. You are to totally disregard the officer's testimony in that regard.

*Id.* at 106. The court also permitted Appellant's counsel to ask the following clarifying questions immediately after the cautionary instruction:

> COUNSEL: Just to clarify where we were. You did take a statement from [Appellant] and recorded it on video, correct?
>
> OFFICER CAPALDI: Correct.
>
> COUNSEL: And in that statement[,] he did not confess to any of the charges in this case?
>
> OFFICER CAPALDI: Correct.

*Id*. Later in the trial, Appellant's counsel described another statement by Appellant as a confession four times. Trial Ct. Op. at 8-9, *citing* N.T. Trial, 10/1/18, at 72-73 (defense counsel's cross-examination of detective to whom Appellant had made a spontaneous statement admitting to ejaculating in Victim's mouth).

On October 5, 2018, the jury convicted Appellant of the above charges. On March 4, 2019, the court sentenced Appellant to a term of 20 to 40 years of incarceration, followed by 7 years of probation. Appellant filed a post-sentence motion, which was denied by operation of law.

Following the reinstatement of his appeal rights *nunc pro tunc*, Appellant filed a notice of appeal. After this Court's remand for the filing of a Pa.R.A.P. 1925(b) statement, both Appellant and the trial court complied with Rule 1925.

Appellant raises one issue for our review:

Did the trial court commit error when it failed to grant a mistrial after the prosecution witness repeatedly used the term "confession" when referring to a statement made by [Appellant] in which he did not confess to committing the crime?

Appellant's Br. at 5.

\*\*\*

We review a trial court's denial of a motion for mistrial for an abuse of discretion. **Commonwealth v. Bryant**, 67 A.3d 716, 728 (Pa. 2013). A mistrial is appropriate "only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Id.** (citation omitted). Furthermore, "as a general rule, the trial court is in the best position to gauge potential bias[,] and deference is due [to] the trial court when the grounds for the mistrial relate to jury prejudice." **Commonwealth v. Walker**, 954 A.2d 1249, 1256 (Pa. Super. 2008) (*en banc*). This is because "the trial judge is the best arbiter of prejudice, because [she] has had the opportunity to observe the jurors, the witnesses, and the attorneys and evaluate the scope of the prejudice." **Id.**

"A mistrial is not necessary where cautionary instructions are adequate to overcome prejudice." **Commonwealth v. Cash**, 137 A.3d 1262, 1273 (Pa. 2016) (citation and internal quotation marks omitted). The jury is "presumed to follow the court's instructions." **Id.**

\*

- 6 -

Appellant asserts that the court abused its discretion when it denied his motion for a mistrial because Officer Capaldi's characterization of his statement as a confession "[led] the jury to incorrectly assume that [Appellant] had sat down with law enforcement and after being read his **Miranda**[2] warnings, admitted to his role in the crime." Appellant's Br. at 11. He explains that "[s]ome have described a confession as 'the gold standard'" in determining guilt. **Id.** (footnote omitted). Appellant argues that this testimony was "highly prejudicial" because the evidence against him primarily consisted of Victim's testimony, the jury convicted him, and the court sentenced him to a lengthy period of incarceration for his crimes. **Id.** at 12. He also argues that the prejudice caused by Officer Capaldi's testimony could not be cured by a cautionary instruction because an instruction "cannot un-ring the bell." **Id.**

The trial court determined that the testimony did not warrant a mistrial because it "issued an instruction to the jury to rectify any perceived prejudice by the officer's statement[,]" and Appellant's counsel asked further clarifying questions immediately after. Trial Ct. Op. at 9. It also noted that Appellant's counsel's "continued use of the word 'confession[,]' . . . refutes the claim that [the] word itself is so prejudicial to warrant a mistrial." **Id.**

Upon careful review, we discern no abuse of discretion. When Officer Capaldi referred to Appellant's statement as a confession, the court

_____

2 **Miranda v. Arizona**, 384 U.S. 436 (1966).

immediately sustained Appellant's objection, held an off-the record discussion, and allowed Appellant's counsel to question Officer Capaldi to clarify that Appellant did not confess. Most importantly, the court gave a curative instruction in which it unequivocally told the jury that there was no confession and to "totally disregard the officer's testimony in that regard." N.T. Trial, 9/27/18, at 106. We presume the jury followed the court's instructions. *Cash*, 137 A.3d at 1273. Moreover, the court was in the best position to observe the proceedings, evaluate the prejudicial effect of the testimony, and determine that a mistrial was unnecessary because a curative instruction was sufficient.

Appellant's arguments fail to persuade us that the trial court abused its discretion in declining to grant a mistrial. Accordingly, having found that the court properly exercised its discretion, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2025