J-S20023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                              :        PENNSYLVANIA
                              :
              v.              :
                              :
                              :
                              :
SANTOS GARCIA-ANDRADE         :
                              :
         Appellant            :  No. 1744 MDA 2024

Appeal from the Order Entered December 5, 2023
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000694-2023

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:                    **FILED: JULY 8, 2025**

Santos Garcia-Andrade ("Garcia-Andrade") appeals from the order denying his motion to dismiss all charges following a mistrial.  We affirm.

In November 2022, Garcia-Andrade's biological daughter, Y.G. (born in December 2005), told her mother about two instances of sexual assault committed by Garcia-Andrade.  Following an investigation, police arrested Garcia-Andrade and charged him with two counts each of rape of a child, statutory sexual assault, aggravated indecent assault, incest, and endangering the welfare of children.

In September 2023, the matter proceeded to a jury trial at which Y.G. testified regarding the two instances of sexual assault.  On the first occasion, while Y.G. was visiting her father at his house, she went upstairs to his room to show him her new tablet.  Y.G. stated that Garcia-Andrade closed the door, placed Y.G. on the bed on her back, removed her leggings and underwear,

and rubbed his penis against her vagina. Y.G. indicated that this assault took place in the spring when she was in third grade. Y.G. further explained that a little over a year later, Garcia-Andrade picked her up from elementary school because it was raining, and that after watching television, he took her to the basement and laid a towel on the concrete floor. Y.G. claimed that Garcia-Andrade directed her to lay on the towel, and he then removed her pants and underwear, laid on top of her, grabbed his penis and attempted to penetrate her vagina, but she was too small. Y.G. testified that she felt pain, and afterward when she used the bathroom, she noticed that she was bleeding. Y.G. indicated that she confronted her father in 2022 and asked him why he hurt her. Y.G. reported that Garcia-Andrade said he was sorry, and that he didn't know what was going on with himself.

The Commonwealth additionally presented the testimony of Renee Riddle, M.D. ("Dr. Riddle"), an expert in pediatrics and child abuse, who conducted a complete physical examination of Y.G. in December 2023. Dr. Riddle explained that the exam revealed a healed transection of Y.G.'s hymen, which meant that her hymen was disrupted through vaginal penetration sometime in the past. This injury was consistent with Y.G.'s complaint regarding bleeding after the second assault. Because the hymen was healed, the event would have occurred more than forty-eight hours earlier, and the use of a tampon would not cause this injury.

After Dr. Riddle completed her testimony, the Commonwealth provided defense counsel with four Childline referrals. Three of the Childline referrals pertained to the alleged assaults by Garcia-Andrade. However, the fourth Childline referral pertained to Y.G.'s allegation that another relative, a maternal brother of Y.G., penetrated her vagina with his penis when she was four or five years old. The Childline referral further indicated that the alleged perpetrator then ran away from home. Because Y.G. and her family chose not to pursue criminal charges against the maternal brother, no investigation was conducted. Based on the belated disclosure of this fourth Childline referral, defense counsel moved for a mistrial, which the trial court granted.

In October 2023, Garcia-Andrade filed a motion to dismiss all charges based on the Commonwealth's discovery violation and double jeopardy principles. On December 5, 2023, the trial court entered an order denying the motion. Garcia-Andrade filed a timely notice of appeal.[1] However, his appeal was dismissed due to his failure to file a docketing statement. He then sought reinstatement of his appellate rights, which the trial court granted. After

---

[1] Pennsylvania appellate courts have found that an order denying a pretrial motion to dismiss on double jeopardy grounds is a collateral order if the trial court does not also make a finding that the motion to dismiss is frivolous. **See** Pa.R.A.P. 313 Cmt. Here, the trial court made no finding that the motion to dismiss was frivolous. Thus, it qualifies as an appealable collateral order. **See Commonwealth v. Brady**, 508 A.2d 286, 289-91 (Pa. 1986) (allowing an immediate appeal from denial of double jeopardy claim under collateral order doctrine where trial court does not make a finding of frivolousness).

Garcia-Andrade filed another notice of appeal, both he and the trial court complied with Pa.R.A.P. 1925.

Garcia-Andrade raises the following issue for our review: "Whether the trial court erred in denying [Garcia-Andrade's] motion to dismiss the information based on a **Brady**[2] violation and double jeopardy." Garcia-Andrade's Brief at 3 (unnecessary capitalization omitted).

This Court applies an abuse of discretion standard of review in cases denying a motion to dismiss on double jeopardy grounds following the declaration of a mistrial, and absent an abuse of that discretion, we will not disturb the court's decision. **See Commonwealth v. Walker**, 954 A.2d 1249, 1254 (Pa. Super. 2008) (*en banc*).

Our Supreme Court has explained that where a mistrial is declared, the double jeopardy clause bars retrial only in certain instances:

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to . . . tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

---

[2] **See Brady v. Maryland**, 373 U.S. 83 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

***Commonwealth v. Johnson***, 231 A.3d 807, 826 (Pa. 2020); ***see also***

***Commonwealth v. Smith***, 615 A.2d 321, 325 (Pa. 1992) (holding that

Article I, § 10, which our Supreme Court has construed more broadly than the

federal double jeopardy clause, bars retrial "not only when prosecutorial

misconduct is intended to provoke the defendant into moving for a mistrial,

but also when the conduct of the prosecutor is intentionally undertaken to

prejudice the defendant to the point of the denial of a fair trial").  However,

the High Court cautioned that not all situations involving serious prosecutorial

error implicate double jeopardy.  ***See Johnson***, 231 A.3d at 826.

As this Court has explained:

> [U]nder Pennsylvania jurisprudence, it is the ***intentionality
> behind the Commonwealth's subversion of the court
> process***, not the prejudice caused to the defendant, that is
> inadequately remedied by appellate review or retrial.  By and
> large, most forms of undue prejudice caused by inadvertent
> prosecutorial error or misconduct can be remedied in individual
> cases by retrial.  Intentional prosecutorial misconduct, on the
> other hand, raises systematic concerns beyond a specific
> individual's right to a fair trial that are left unaddressed by retrial.
> As this Court has often repeated, "[a] fair trial is not simply a lofty
> goal, it is a constitutional mandate, . . . [and] [w]here that
> constitutional mandate is ignored by the Commonwealth, we
> cannot simply turn a blind eye and give the Commonwealth
> another opportunity.

***Commonwealth v. Kearns***, 70 A.3d 881, 884-85 (Pa. Super. 2013)

(emphasis in original, citation omitted).

Garcia-Andrade contends that the detective investigating this matter

knew that Y.G. had accused another individual of molesting her; specifically,

that this other individual tried to penetrate her vagina with his penis.  Garcia-

Andrade asserts that the detective listened as Dr. Riddle told the jury that her examination of Y.G. was consistent with the reports in this case. Garcia-Andrade argues that, while this testimony was being presented to the jury, the detective, who was sitting at the Commonwealth's table, knew that another individual had been accused of abusing Y.G., and that these other allegations were also consistent with the exam results which Dr. Riddle described. Garcia-Andrade claims that the detective's silence amounted to a discovery violation which triggered a mistrial, and should also bar a retrial. Garcia-Andrade claims that, to remain silent in light of this knowledge amounts to intentional conduct meant to deprive him of a fair trial, or, in the alternative, amounts to a reckless disregard for the risk of an unfair trial. Garcia-Andrade contends that, in either case, the proper remedy for this conduct is to bar a retrial in this matter.

The trial court considered Garcia-Andrade's issue and determined that it lacked merit. The court reasoned:

> In the case at bar, [defense] counsel made a motion for a mistrial during trial following receipt of a nondisclosed ChildLine referral that documented and alleged [an] allegation by the alleged victim against an individual other than [Garcia-Andrade]. This report had not been investigated by the Commonwealth as the victim's family did not want the allegation investigated. This court granted [the] defense request for a mistrial, finding that the Commonwealth's own expert had not been provided with this information which may have changed the expert's testimony. This court's ruling did not represent a ruling in favor of [Garcia-Andrade] of any of the factual elements of the offenses charged[.]
> . . .

* * * * *

In the above captioned case, the allegation of prosecutorial misconduct is the failure to tun over a child referral alleging [Y.G.] made a complaint against a second individual. At the direction of the family, there was no investigation by the Commonwealth into this allegation. Therefore, there were no reports other than the referral to turn over to defense. There was no verification of the allegation. However, because the doctor had testified without this information, the court, in an abundance of caution[,] granted the mistrial over the Commonwealth's objection. There was no evidence of intentional misconduct by the prosecution, therefore double jeopardy does not attach, and [Garcia-Andrade] is not entitled to relief.

* * * * *

. . . [T]here is no evidence of deliberate, bad faith overreaching by the Commonwealth intending to provoke [Garcia-Andrade] into seeking a mistrial, nor is there evidence that the failure to turn over the referrals was an attempt by the Commonwealth to deprive [Garcia-Andrade] of a fair trial. The Commonwealth did not investigate the other allegations because [Y.G.] had directed them not to. The Commonwealth only had the referrals because there was no investigation conducted by the Commonwealth, meaning there were no reports made and there was no verification of the allegation. Therefore, because there is no evidence of deliberate, bad faith overreaching by the Commonwealth, dismissal would be an improper remedy for the **Brady** violation and a less severe remedy, such as the granting of a mistrial, would be appropriate.

Trial Court Opinion, 1/16/25, at 3-4, 5, 7 (unnecessary capitalization and citations omitted).

Based on our review, we discern no abuse of discretion by the trial court in denying Garcia-Andrade's motion to dismiss all charges. As the trial court explained, there was no investigation by the Commonwealth into the allegation regarding Y.G.'s maternal brother or any verification of that allegation. Nor is there any indication on the record before us that the

prosecution intended to provoke Garcia-Andrade into seeking a mistrial, or that the failure to turn over the referral was an attempt by the Commonwealth to deprive Garcia-Andrade of a fair trial. Importantly, "retrial is only precluded where there is prosecutorial **overreaching**-which, in turn, implies some sort of conscious act or omission." *Johnson*, 231 A.3d at 826 (emphasis in original). Here, there is no evidence in the record, nor any allegation by Garcia-Andrade, that the prosecutor was aware of the fourth Childline referral prior to trial. *See* N.T. (Hearing on Motion to Dismiss), 11/16/23, at 3 (wherein the prosecutor explained that, although the investigating officer was aware of the fourth Childline referral, he did not include it in his report).

While there can be no dispute that the Childline referral should have been turned over to the defense,[3] we emphasize that mere prosecutorial error does not deprive the defendant of a fair trial. *See Commonwealth v. Kearns*, 70 A.3d 881, 884 (Pa. Super. 2013). Moreover, not all situations involving even serious prosecutorial error implicate double jeopardy. *See Johnson*, 231 A.3d at 826. Based on the record before us, we conclude that the trial court struck the right balance by granting a mistrial but denying Garcia-Andrade's motion to dismiss all charges based on the belated disclosure of the unverified Childline referral.

_____

[3] Notably, even if the additional allegation against the maternal brother had been verified, it would not exonerate Garcia-Andrade, as his alleged crimes against Y.G. could have been perpetrated independently to any crimes committed against Y.G. by other individuals.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/08/2025