J-A18040-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| KENNETH TERRY | : | |
| | : | |
| Appellant | : | No. 78 WDA 2023 |

Appeal from the Judgment of Sentence Entered August 19, 2022
In the Court of Common Pleas of Lawrence County Criminal Division at
No(s): CP-37-CR-0000444-2021

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED: SEPTEMBER 1, 2023**

Kenneth Terry appeals from the judgment of sentence entered following his convictions for four counts of possession with intent to deliver and one count of possession of drug paraphernalia. 35 P.S. § 780-113(a)(30), (a)(32). We affirm the convictions but remand for the trial court to correct a partially illegal sentence.

The trial court recounted the factual history of this case as follows:

> On May 26, 2021, law enforcement for Lawrence County was contacted by the management of . . . an extended stay hotel in Union Township, Lawrence County, Pennsylvania. The management reported possible drug-related activity on the premises. The management became suspicious upon witnessing a large amount of foot traffic coming and going, specifically from Rooms 110, 111, and 202. Records supplied by the management indicated that these rooms were rented by individuals giving the names Bob Marley, Giovanni Johnson, and Angela Ragen, respectively. The rooms were paid for with cash.

> Detective Richard Ryhal viewed historical surveillance and conducted live surveillance from the view of the camera placed in the hallway of Rooms 110 and 111, the doors to which were located across from each other. As a result of his surveillance,

Detective Ryhal observed multiple individuals arriving at Room 111, entering, staying inside for a few minutes, and then leaving Room 111 and the hotel. Further, a black male was observed walking between Rooms 110 and 111 between the visits of the individuals. The black male was seen carrying various items, including ice and cooking utensils. As Detective Ryhal testified, the totality of these observations is consistent with an indication of narcotics dealing. A search warrant was consequently applied for and granted at approximately 5:30 P.M. on May 26, 2021.

At approximately 6:45 P.M. on May 26, 2021, law enforcement made entry into the hallway of Rooms 110 and 111 at [the hotel] in order to execute the aforementioned search warrant. Simultaneously, [Terry] and his co-defendant [Keyon Lee] appeared in the doorway of Room 111 and spotted law enforcement entering. [Terry] and [Lee] then attempted to flee down the opposite end of the "L"-shaped hallway. Unbeknownst to [Terry], law enforcement had entered on both ends of the hallway, and [Terry] and [Lee] were quickly detained. A variety of bills were observed being discarded as the duo fled, however neither law enforcement nor the surveillance footage could definitively attribute the abandoned currency specifically to [Terry] or [Lee]. On [Terry's] person at the time of his arrest was $28.00 in cash, a cell phone, a handheld video game player, and three room keys (two for Room 202, one for Room 111). Paperwork containing [Terry's] name was discovered in Room 202, however this was the only property specifically attributable to [Terry] from the three rooms searched.

Inside Room 110, law enforcement recovered 56.3 gross grams of suspected crack cocaine; $51,836.00 in cash; a cell phone; a smart watch; a bag of suspected marijuana; and two spoons covered in suspected cocaine residue.

Inside Room 111, law enforcement recovered three bags of suspected heroin, totaling 64 gross grams; two bags of suspected crack cocaine, totaling 44.2 grams; a digital weigh scale; a handgun; a bag of suspected marijuana; and multiple cell phones.

Inside Room 202, law enforcement recovered a blender with suspected drug residue; a foil pan; $60,000.00 in cash; and the aforementioned paperwork containing [Terry's] name.

Trial Court Opinion, 3/1/23, at 4–6.

The case proceeded to trial beginning June 14, 2022. Relevantly, the hotel property manager testified that Terry had accompanied two of the other individuals when they paid for the hotel rooms with cash and frequented the hotel "[j]ust about every day" for four weeks before his arrest. N.T., 6/14/22, at 28. For a week or two, Terry would go between the three rooms with the same McDonald's bag "multiple times a day." *Id.* at 29–30.

In his closing argument, Terry urged the jury to consider deficiencies in the investigation:

> Think about this: We are one year later -- over one year later, and we don't have anybody coming forth saying, Mr. Terry sold me drugs on that day. We don't have a confidential informant saying this is what happened. We don't have, prior to them making their arrest, them setting up any undercover officer to see what was happening. We don't have any controlled buys to see if Mr. Terry was an individual who was selling any controlled substances.
>
> We don't have -- we have the suspicion, but we have people who are leaving, **we don't have the officers stopping**, which, by the way, it's not just Detective Ryhal and Detective Ferrucci, it's the Lawrence County Drug Task Force. It's officers from Union. There are multiple officers available. **None of them stopping and asking, hey, what's going on? None of them saying, some guy with dreads sold me drugs.** We got none of that.
>
> We don't have a K-9 officer walking through the parking lot, confirming that -- having a hit that this person who just walked in there when Mr. Terry was alone now has drugs on him. We don't have anything of that nature. It's one year later. We're at trial. They don't have the evidence, because it's not there.

N.T., 6/17/22, at 12–13 (emphasis added).

The assistant district attorney objected, stating that the parties had agreed not to address whether task force members spoke with anyone who

visited the hotel room where the drugs were sold. *Id.* at 16–17.[1] On the Commonwealth's motion, the trial court struck the objected-to portion of the argument and provided the following instruction:

> I'm going to ask the jury to strike from your consideration the comments of [trial counsel] that the Lawrence County Drug Task Force did not speak to any of the individuals that went into Room 111 that day and received information that [Terry] was dealing drugs. So if you'll just strike that from your consideration, then, and we'll hear from [the Commonwealth].

*Id.* at 22. Although Terry objected to the curative instruction, he did not move for a mistrial.

The jury convicted Terry of all five charges. On August 19, 2022, Terry received his sentence, an aggregate of 8 to 16 years of imprisonment. The trial court amended the restitution amount of Terry's sentence on September 6, 2022. Terry filed post-sentence motions, which the trial court denied on January 11, 2023.

On January 18, 2023, Terry filed a notice of appeal. Terry and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925. The Commonwealth did not file an appellate brief.

Terry challenges four actions of the trial court:

I.    Whether the trial court erred and abused its discretion in denying [Terry's] post-sentence motion, by finding that the jury's verdict was based on evidence sufficient to sustain his convictions beyond a reasonable doubt?

---

[1] On cross-examination, Detective Ryhal testified that he questioned one individual who had visited the hotel room, "but I didn't know if I could talk about that or not." N.T., Trial Vol. II, 6/15/22, at 31.

II. Whether the trial court erred and abused its discretion in failing to declare a mistrial, *sua sponte*, upon the [occurrence] of what [Terry] alleges was a **_Brady_** violation?

III. Whether the trial court erred and abused its discretion in sentencing [Terry] consecutively, rather than concurrently, resulting in an unreasonable and excessive sentence?

IV. Whether the trial court erred and abused its discretion in denying [Terry's] post-sentence motion, by finding that the jury's verdict was not against the weight of [the] evidence?

Terry's Brief at 8–9 (capitalization omitted).

I.

Terry first challenges the sufficiency of the evidence at all counts. He argues that his mere presence in a room with drugs, as well as his attempt to flee when the police arrived, are legally insufficient to prove that he possessed the drugs and paraphernalia. He notes that the Commonwealth did not call the other people in the hotel to testify. Rather, Terry contends that the only support for his involvement in the drug distribution is based on speculation and conjecture. Therefore, he concludes that the trial court erred in denying his post-sentence motion for judgment of acquittal.

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the factfinder to find every element of a crime beyond a reasonable doubt.

**_Commonwealth v. Bathurst_**, 288 A.3d 492, 500 (Pa. Super. 2023) (quoting **_Commonwealth v. Tejada_**, 107 A.3d 788, 792 (Pa. Super. 2015) (brackets omitted).

In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the factfinder, while passing upon the credibility of the witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Id.* (quoting *Commonwealth v. Cahill*, 95 A.3d 298, 300 (Pa. Super. 2014)) (brackets omitted).

The crimes at issue here are possessory. We have explained:

The Commonwealth may meet its burden of proving a possessory crime by showing actual possession, constructive possession, or joint constructive possession. *Commonwealth v. Thompson*, 428 A.2d 223, 224 (Pa. Super. 1981). "Constructive possession" is "the ability to exercise a conscious dominion over" the contraband. *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014). It usually comes into play when police find contraband somewhere other than on the defendant's person. Constructive possession requires proof that the defendant had knowledge of the existence and location of the item. *Thompson*, 428 A.2d at 224. The Commonwealth may prove such knowledge circumstantially. That is, it may prove that the defendant had knowledge of the existence and location of the items at issue "from examination of the totality of the circumstances surrounding the case," such as whether the contraband was located in an area "usually accessible only to the defendant." *Id.*

*Commonwealth v. Hall*, 199 A.3d 954, 960–61 (Pa. Super. 2018) (citations altered).

- 6 -

Generally, a defendant's presence at the scene of a crime, while probative, is not sufficient to establish guilt. *Hall*, 199 A.3d at 961 (citing *Vargas*, 108 A.3d at 869). For a possessory offense, "a defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items." *Commonwealth v. Wright*, 255 A.3d 542, 553 (Pa. Super. 2021) (quoting *Commonwealth v. Parrish*, 191 A.3d 31, 37 (Pa. Super. 2018)).

Likewise, a defendant's flight from a crime scene is not sufficient to prove guilt when the only additional evidence is presence. *Commonwealth v. Hargrave*, 745 A.2d 20, 23–24 (Pa. Super. 2000) (citing *Commonwealth v. Goodman*, 350 A.2d 810, 811–12 (Pa. 1976)). "The additional element of flight, which is as consistent with fear as with guilt, does not convert presence into proof of guilt." *Id.* at 24 (quoting *Goodman*, 350 A.2d at 811).

Here, however, the Commonwealth's proof included more than Terry's presence in the hotel and attempted flight when police arrived. The hotel property manager identified Terry as being at the hotel "[j]ust about every day" for four weeks and appearing with two of the people who paid for the hotel rooms in cash. N.T., 6/14/22, at 28. She saw him going between the three rooms "multiple times a day" with the same McDonald's bag for a week or two. *Id.* at 29–30. Although the manager admitted she might have mistaken Terry for other individuals, *id.* at 54, the jury was free to credit her identification of him.

The manager's description of Terry repeatedly carrying the same bag between the rooms where police recovered drugs, money, and paraphernalia supports the inference that he was actively involved in drug distribution, not a passive observer. It tends to show that Terry was concealing drugs and/or money. Combined, the evidence was sufficient to allow the jury to conclude that Terry constructively possessed the drugs and paraphernalia recovered from the hotel rooms where he was observed. Therefore, Terry's first challenge fails.

II.

Second, Terry challenges the trial court's failure to declare a mistrial *sua sponte* during closing arguments. Terry's counsel argued to the jury that the police did not interview anyone who allegedly bought drugs at the hotel. At sidebar, the prosecutor said he had told Terry's counsel after his opening statement that the drug task force did interview people who had visited the hotel room. He said, however, that the parties had agreed not to address the matter at trial.

Terry now argues that this exchange showed that the Commonwealth violated **Brady v. Maryland**, 373 U.S. 83 (1963). He notes that in discovery, the Commonwealth had not named any eyewitnesses. Terry maintains that the failure to reveal the existence of witnesses before trial was a violation of the **Brady** rule. He contends that the trial court should have declared a mistrial *sua sponte* when this **Brady** violation came to light at sidebar.

This Court reviews a claim that a trial court should have declared a mistrial *sua sponte* to determine whether the trial court abused its discretion. ***Commonwealth v. Cornelius***, 180 A.3d 1256, 1262 (Pa. Super. 2018) (citing ***Commonwealth v. Kelly***, 797 A.2d 925, 936 (Pa. Super. 2002)). A trial court has "discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity," which arises "only in very extraordinary and striking circumstances." ***Id.*** (quoting ***Kelly***, 797 A.2d at 936, 939); ***see*** Pa.R.Crim.P. 605(B) ("[T]he trial judge may declare a mistrial only for reasons of manifest necessity.").

The trial court noted that Terry never objected or moved for a mistrial during closing arguments or when the issue arose during cross-examination of Detective Ryhal. Trial Court Opinion, 3/1/23, at 10–11. The court found that Terry had not developed a meaningful argument why manifest necessity existed for it to declare a mistrial. ***Id.*** at 12. Rather, the trial court reasoned that it acted within its discretion by providing a curative instruction based on the representations of the parties. ***Id.***

Terry's claim depends on whether the Commonwealth's nondisclosure of witness interviews violated ***Brady***. The Supreme Court of the United States held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." ***Brady***, 373 U.S. at 87. ***Brady*** imposes a "limited" duty on the prosecution and is not a general discovery rule. ***Commonwealth v.***

*Lambert*, 884 A.2d 848, 854 (Pa. 2005) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).  The three elements of a *Brady* violation are: "the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued."  *Id.* (quoting *Commonwealth v. Burke*, 781 A.2d 1136, 1141 (Pa. 2001)).

Here, Terry has not shown the first element of a *Brady* violation by explaining how the evidence suppressed by the prosecution was "favorable" to him.  The evidence at issue was that the drug task force had spoken with people who entered the hotel room and bought drugs from Terry.  N.T., 6/17/22, at 19.  This evidence appears to be inculpatory, in that it makes it more likely that Terry was actively involved in selling drugs from the hotel. Terry has not argued how the existence of these witnesses to his crimes could be favorable to him.[2]  Therefore, he has not demonstrated a *Brady* violation.

Without a *Brady* violation, Terry has not shown how the prosecution's late disclosure of a witness constitutes a "manifest necessity" for the trial court to declare a mistrial *sua sponte*.  *Cornelius*, *supra*.  We thus find no abuse of discretion in the trial court's actions.  Terry's second challenge fails.

---

[2] Terry suggested to the trial court that if he had known about this evidence before trial, he might have agreed to plead guilty for a lesser sentence. Concise Statement, 2/1/23, at 23.  He has not included this analysis in the argument section of his appellate brief.

III.

Third, Terry challenges the trial court's imposition of consecutive sentences between two counts of possession with intent to deliver, which resulted in an aggregate term of 8 to 16 years. He contends that this was inappropriate because the trial court did not consider (1) his age, (2) his prior record score of zero, and (3) the circumstantial nature of the evidence. This claim implicates the discretionary aspects of sentencing. ***Commonwealth v. Kurtz***, 294 A.3d 509, 535 (Pa. Super. 2023) (citing ***Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa. Super. 2014)).

The following principles guide our review over a challenge to the discretionary aspects of sentence:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal. An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence.

>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect, ***see*** Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

*Commonwealth v. Salter*, 290 A.3d 741, 748 (Pa. Super. 2023) (quoting *Zirkle*, 107 A.3d at 132) (brackets omitted). We will affirm the sentence within the guidelines range unless "the application of the guidelines would be clearly unreasonable." *Commonwealth v. Dodge*, 77 A.3d 1263, 1274 (Pa. Super. 2013) (citing 42 Pa.C.S.A. § 9781(c)(2)).

Notably, a sentencing court has discretion under the Sentencing Code to impose consecutive sentences. *Commonwealth v. Brown*, 249 A.3d 1206, 1212 (Pa. Super. 2021) (citing *Commonwealth v. Marts*, 889 A.2d 608, 612 (Pa. Super. 2005), and 42 Pa.C.S.A. § 9721). This Court "will not disturb consecutive sentences unless the aggregate sentence is 'grossly disparate' to the defendant's conduct, or 'viscerally appear[s] as patently unreasonable.'" *Id.* (quoting *Commonwealth v. Gonzalez–Dejusus*, 994 A.2d 595, 599 (Pa. Super. 2010)). This follows the principle that a defendant is "not entitled to a 'volume discount'" for multiple crimes. *Commonwealth v. Bankes*, 286 A.3d 1302, 1310 (Pa. Super. 2022) (quoting *Commonwealth v. Clary*, 226 A.3d 571, 581 (Pa. Super. 2020)).

Here, Terry raised a substantial question and met all the requirements for this Court to review his claim. *See Kurtz*, 294 A.3d at 535–36 (citing *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*)) (finding a substantial question for an excessive sentence claim and an assertion that the court did not consider mitigating evidence); *accord Dodge*, 77 A.3d at 1272 (finding a substantial question for consecutive sentences and

an allegation that the court did not consider the nature of the offenses).[3]  We therefore turn to the merits.

In denying Terry's post-sentence motion, the trial court explained that it found a long sentence was appropriate "in light of the criminal conduct in this case," particularly "the quantity and type of the drugs at issue, combined with the volume of foot traffic entering and exiting the hotel rooms containing those drugs."  Opinion, 1/11/23, at 8.  Furthermore, the court stated that it was not inclined to give Terry a "volume discount" for the significant amount of heroin and fentanyl that he possessed in separate hotel rooms.  *Id.*

Regarding mitigating factors, Terry's counsel at sentencing stated that Terry was 26 years old, had no prior convictions, and was minimally involved in the drug distribution from the hotel.  N.T., 8/19/22, at 7–8.  The trial court said that it considered the statements of counsel before imposing sentence.  *Id.* at 11.  Therefore, the record reflects that the trial court considered the factors that Terry claims it missed.  Terry has not shown how his aggregate 8-to-16-year term of imprisonment is grossly disproportionate to his conduct or how the imposition of sentences within the guidelines was clearly

_____

[3] We treat Terry's notice of appeal as timely filed due to (1) the Commonwealth's untimely post-sentence motion resulting in a bifurcated sentencing proceeding, *see Commonwealth v. Cochran*, 244 A.3d 413 (Pa. 2021), (2) Terry's post-sentence motion filed 30 days after the amended order of sentence, (3) a breakdown in the operation of the court when the clerk of courts failed to enter an order that the post-sentence motion was deemed denied by operation of law, *see Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003), and (4) Terry filing his notice of appeal within 30 days of the trial court's order denying his post-sentence motion.

unreasonable. We therefore conclude that the trial court did not abuse its discretion at sentencing. Terry's third challenge fails.

IV.

Fourth, Terry challenges the trial court's denial of his post-sentence motion for a new trial based on the weight of the evidence. Terry incorporates his argument that the evidence was insufficient to show his involvement in selling drugs. He characterizes the testimony of the hotel property manager that he passed from room to room every day as "speculation, conjecture, and innuendo." Terry invites this Court to ask why the Commonwealth did not present any witness testimony directly implicating him, such as from his co-defendant, confidential informants, undercover agents, or drug purchasers. He concludes that the trial court abused its discretion in overlooking the flaws in the record supporting his convictions.

Our review of a weight-of-the-evidence claim follows these principles:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa. Super. 2022) (quoting *Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017)).

"To successfully challenge the weight of the evidence, a defendant must prove the evidence is 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Id.* (quoting *Windslowe*, 158 A.3d at 712). Accordingly, when a trial court has found that a verdict did not "shock that court's own conscience," an appellant must prove that the court abused its discretion by showing "how the trial court's ruling overrode the law, was manifestly unreasonable, or the product of bias, prejudice, ill-will[,] or partiality." *Commonwealth v. Rogers*, 259 A.3d 539, 541 (Pa. Super. 2021) (quoting *Commonwealth v. Santos*, 176 A.3d 877, 882 (Pa. Super. 2017)).

Here, the trial court rejected Terry's weight claim:

[The trial court] had the opportunity to hear and see the same evidence presented to the jury in the Commonwealth's thorough case-in-chief. The Commonwealth's evidence . . . included the testimony from the investigating police officers, the expert from the Pennsylvania Crime Lab, and the [hotel property manager]; the drugs, the cash, and the drug paraphernalia recovered; and the multiple videotapes from [the hotel] surveillance systems. Clearly, the Commonwealth provided the jury with plenty of material to sift through and weigh as it reached its verdicts. When balancing the totality of the evidence against [Terry's convictions,] **this Court's sense of justice was not then, and is not now, shocked by these verdicts**.

Opinion, 1/11/23, at 17 (emphasis added).

- 15 -

We discern no abuse of discretion. The trial court, having observed the presentation at trial, found that the verdict did not shock its sense of justice. Rather, it regarded the Commonwealth's case as particularly strong. We conclude that Terry has not shown how this decision was manifestly unreasonable or was otherwise an abuse of discretion. Terry's fourth challenge fails.

V.

As a final matter, we note that this Court may correct an illegal sentence *sua sponte*. **Commonwealth v. Tanner**, 61 A.3d 1043, 1046 (Pa. Super. 2013) (citing **Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super. 2003) (*en banc*)). Restitution is part of a criminal sentence. **See Commonwealth v. Mulkin**, 228 A.3d 913, 918–19 (Pa. Super. 2020) (citing 18 Pa.C.S.A. § 1106). Restitution is proper when a victim's property is stolen, converted, unlawfully obtained, or decreased in value or when a victim suffers personal injury directly resulting from the crime. 18 Pa.C.S.A. § 1106(a); **see Commonwealth v. Laur**, 295 A.3d 241, 244 (Pa. Super. 2023) (holding that a restitution order to an entity that is not a victim and has not compensated a victim is an illegal sentence).

Here, the trial court ordered Terry to pay restitution to the Pennsylvania State Police Crime Lab for lab fees of $428.00, later amended to $522.96. Lab fees are properly classified as costs of prosecution, not restitution. 42 Pa.C.S.A. § 1725.3. We will therefore vacate only the restitution portion of

- 16 -

Terry's sentence order and remand for the trial court to order lab fees as a mandatory cost.

Restitution portion of sentence vacated. Case remanded for entry of an order of costs consistent with this memorandum. Judgment of sentence affirmed in all other respects. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2023